UNITED STATES of America, Plaintiff,

v.

Jackson B. BRAGG, D.O., Defendant.

UNITED STATES of America, Plaintiff,

v.

John E. KAYE, D.O., Defendant.

Nos. 77–491–Orl–Civ–R,
77–492–Orl–Civ–R.

United States District Court,
M. D. Florida,
Orlando Division.

June 24, 1980.

Mark L. Horwitz, Asst. U. S. Attorney, Orlando, Fla., David B. Palmer, Health Care Financing and Human Development Services Division, Dept. of Health, Ed. and Welfare, Washington, D. C., for plaintiff.

William M. Barr of Raymond, Wilson, Conway, Barr & Burrows, Daytona Beach, Fla., for defendant.

## MEMORANDUM OF DECISION

REED, District Judge.

The complaint in the case of *United States vs. Jackson B. Bragg* alleges that from 1967 to 1970 the defendant rendered treatment to beneficiaries under the medicare program established by the Social Security Act, 42 U.S.C. § 1395 et seq. The complaint states that the carrier administering the program for the Government, Blue Shield of Florida, made payments to the defendant Bragg on assigned claims. The complaint alleges that the carrier concluded on 3 January 1972 that the defendant was overpaid in the amount of $27,-797.62 for services rendered by him to medicare beneficiaries in 1967, 1968 and 1969, and concluded on 25 April 1974 that the defendant was overpaid in the amount of $1,941.72 for services rendered in 1970. The basis for the claim is the Government's contention that the defendant was paid for services which were not medically necessary.

The defendant's answer admits the rendition of services to medicare beneficiaries in the years 1967 through 1970 and that Blue Shield of Florida acted as the "carrier", but denies that the defendant rendered or was paid for unnecessary medical services. The answer of Bragg alleges several defenses. The only one of immediate significance is that the Government's action for recoupment was not commenced within the time prescribed by the applicable statute of limitations, 28 U.S.C. § 2415.

The complaint against the defendant John E. Kaye is substantially similar to the complaint against Bragg. It alleges that the carrier concluded on 3 January 1972 that Kaye was overpaid in the amount of $15,973.46 for services rendered in the years 1967 through 1969 and that on 15 May 1974 the carrier concluded that Kaye was overpaid in the amount of $6,013.69 for services rendered in 1970.

Kaye's answer, like that of Bragg, admits that he rendered services in the years in question to medicare beneficiaries, but denies that the services were medically unnecessary. Kaye's answer also raises the defense of the statute of limitations.

The complaint was filed in each case on 29 November 1977 and seeks damages in the amount of the alleged overpayments. In each case a motion for summary judgment was filed by the Government on 30 April 1979 and a cross motion for summary judgment was filed by each defendant on 26 July 1979. The Government's motion for summary judgment is based on the contention that its administrative determination of the fact and amount of overpayment is binding upon the defendants and cannot be reviewed by the court. The defendants' motions for summary judgment are based on the contention that the actions were not filed within the statute of limitations.

The following facts appear to exist without controversy. They are taken from the affidavits of John Bader filed in support of the Government's motions, except where otherwise indicated.

To administer the medicare program under Part B, the Secretary of Health, Education, and Welfare entered into an agreement with Blue Shield of Florida. Under this agreement, Blue Shield became a fiscal carrier responsible to determine whether services furnished to beneficiaries are covered under the provisions of Part B, 42 U.S.C. § 1395 et seq., and to make payment for services properly furnished to eligible persons.

Blue Shield, acting as the Government's agent, paid Bragg medicare Part B payments on claims assigned by beneficiaries as follows:

| | |
|---|---|
| 1967 | $ 13,587.90 |
| 1968 | 28,071.40 |
| 1969 | 38,084.20 |
| 1970 (8 months) | 13,261.20. |

Blue Shield paid Kaye on claims assigned to him by medicare beneficiaries as follows:

| | |
|---|---|
| 1967 | $ 19,450.05 |
| 1968 | 48,517.64 |
| 1969 | 39,123.56 |
| 1970 (8 months) | 12,916.40. |

On 28 March 1969, Joseph Bullock advised an assistant regional representative of the medicare program in Atlanta, Georgia, of medically unnecessary services being furnished at Daytona Beach General Hospital, an osteopathic hospital in Volusia County, Florida, owned by Bragg and Kaye. Bullock was on the staff of the hospital. On 3 March 1969, Donald Cann, a doctor of osteopathic medicine, wrote Blue Shield complaining of medically unnecessary services at the hospital. Also in March 1969, Joseph Bullock and his brother Tom Bullock informed an investigating employee of Blue Shield that the hospital's utilization review committee was frustrated by Bragg and Kaye in the performance of its function—to review the utilization of services of the hospital with respect to medical necessity.

In May 1969, the medical consultant of Blue Shield, Dr. R. K. Shaar, reviewed twenty-five patient charts taken from the hospital and expressed the opinion that over one-half the cases involved medically unnecessary services. Based on this review, Dr. Shaar recommended that Bragg and Kaye's medicare Part B payments be further reviewed for over-utilization.

In May 1970, Blue Shield sought a review of Bragg and Kaye's utilization pattern by the "Insurance Review Committee" of FOMA (Florida Osteopathic Medical Association). This committee advised Blue Shield that Bragg and Kaye had furnished medically unnecessary services and suggested that refunds be collected.

On 9 September 1970, Blue Shield demanded from Bragg a refund of $50,588.88 for over-utilization for 1967–1969 and on 28 August 1970, Blue Shield made a refund demand of $32,138.60 on Kaye for over-utilization in 1968 and 1969.

Blue Shield concluded that the statistical method it used to calculate the dollar amount of the over-utilization was not accurate, but it still considered the method produced "strong evidence of the existence of some systematic overutilization . .".

On 2 February 1971, Blue Shield furnished the Peer Review Committee of FOMA a random sample of Bragg and Kaye's patient charts for years 1967 through 1969. The Peer Review Committee met with Bragg and Kaye and independently considered the sampling. On 27 April 1971, the chairman of the Peer Review Committee wrote to J. P. Lewis of Blue Shield stating:

"A review, at our recent meeting of the Florida Osteopathic Medical Association Peer Review Committee held in Orlando, Florida on April 24th and 25th, 1971, of the charts of the above captioned Doctors Kaye and Bragg. The charts were reviewed by the 5 man committee at that time. As you are aware that half the charts of Doctors Kaye and Bragg were reviewed on a former occasion and the remainder of the charts were reviewed at this time.

It was the overall opinion of the Committee that not much difference was noted between the first group of charts and the second group and that the overall pattern did show definite evidence of over utilization. There were a good number of cases noted that had short term stays or expired that had proper and adequate medical care but there were also noted a number of cases that could have had further workup and did not have adequate follow up medical care. In addition to these there was a number of cases with extended post surgical stays as well as those cases that extended hospital stays referred to extended care facilities and returned to hospital for further hospital care. There were also a number of cases that should have been referred to the extended care facility prior to their finally being done so.

Since all cases of anything are not all bad some slight consideration might be given in reduction of the suggested amount of refund. As noted by some of the notes regarding some of the long term stays which were apparently not over utilized."

This letter appears as Exhibits 71–18 to the affidavit submitted in opposition to the Government's motion by Bragg.

Following the recommendation of the Peer Review Committee, Blue Shield employed a statistician who calculated the dollar amount of the over-utilization based on cases of actual over-utilization as identified by the Peer Review Committee of FOMA. This procedure was completed on 27 December 1971.

On 7 January 1972, Bragg and Kaye were advised by Blue Shield of the over-utilization determination and a demand for refund was again made. Bragg and Kaye were also advised that they had a right to a hearing if demanded within six months. Neither Bragg nor Kaye demanded a hearing.

At some point in time not specified in the affidavits, Blue Shield reviewed the claims submitted by Bragg and Kaye for hospital visits in 1970. This review was undertaken by a Blue Shield medical consultant. After the review Bragg and Kaye were offered "peer review" by the Peer Review Committee of FOMA, but neither requested it. Thereafter, Blue Shield determined that Kaye was overpaid $6,013.49 and Bragg $1,941.72 for services rendered in 1970. The overpayment determination was communicated to Bragg on 29 April 1974 and to Kaye on 11 June 1974. Both were informed of the right to a further administrative hearing, but neither exercised same.

■ Relying on Sections 1395ii and 405(h) of Title 42, United States Code, the Government contends that the administrative determination by the Secretary that the defendants received payments for medically unnecessary services and the amounts of such payments is beyond the scope of judicial review. For that reason it argues there is no triable issue of fact and it is entitled to summary judgment. To support its contention, the Government cites *St. Louis Univ. v. Blue Cross Hospital Serv.*, CA8, 1976, 537 F.2d 283, *cert. denied*, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584, and *Dr. John T. MacDonald Foundation v. Califano*, CA5, 1978, 571 F.2d 328. Neither case addresses the issue which is before this court. In each it was held that the federal district court did not have subject matter jurisdiction *under 28 U.S.C. § 1331* to review the Secretary's decision as to amounts due medicare providers. In *Dr. John T. MacDonald Foundation v. Califano*, the court stated:

". . . We therefore hold that § 405(h), incorporated into § 1395ii of the Medicare Act, precludes all review of the Secretary's decisions by federal district courts *brought under § 1331*." (p. 331). (Emphasis added).

The issue before this court is whether or not in an action brought by the Government for recoupment where the court has subject matter jurisdiction under 28 U.S.C. § 1345, the court is precluded by §§ 1395ii and 405(h), Title 42, United States Code, from reviewing the merits of the claim. If those statutes are construed to permit the Government to seek judicial relief on the one hand and on the other to deny the defendant the right to judicial hearing on the merits, their constitutionality is highly questionable. However, the court does not need to decide the constitutional issue because 42 U.S.C. § 405(h) is subject to a reasonable interpretation which would allow this court to avoid it. The last sentence of Section 405(h) addresses itself specifically to judicial proceedings brought under 28 U.S.C. § 1331. It is reasonable to infer from the specific nature of that language that it states the extent to which Congress intended to preclude judicial review of decisions by the Secretary. It is, therefore, the opinion of this court that where the court's jurisdiction is predicated on 28 U.S.C. § 1345, the court is not precluded by §§ 1395ii and 405(h), supra, from reviewing the merits of the claim.

■ As an alternate basis for the Government's argument that the court may not review the factual determinations as to amount of overpayment and the fact of over-utilization, the Government suggests that the defendants are estopped by their failure to participate in administrative review which was offered to them by the Secretary following his determination of the fact and amount of liability. Here again the Government has cited the court to

authority which does not appear to be applicable. In *Ulman v. United States*, Ct.Cl. 1977, 558 F.2d 1, 7, it was held that:

".  .  . *Where an administrative appeal is compulsory* prior to invoking the aid of a court, it does not matter that the party who failed to pursue such appeal is petitioning the court for relief or defending an action brought against him.  In either situation, the failure to pursue the prescribed administrative course effectively prohibits him from raising in court the merits of this claim or defense which could have been entertained administratively in the first instance." (Emphasis added).

While the *Ulman* case may state a valid principle of administrative law, the principle is inapplicable to the present situation.

The pertinent regulations appear in 20 C.F.R. § 405.801 through 405.872.  Those regulations do not relate to a situation where a payment has been made under Part B of the Medicare Act and a return of the payment is sought by the Government.  In *Szekely v. Florida Medical Association*, CA5, 1975, 517 F.2d 345, 348, the court stated:

".  .  . It is fairly clear from the words of the statute and regulations, § 1395u(b)(3)(C) and 20 C.F.R. § 405.801 et seq. that the hearing and review there provided to determine if payment is proper, are to be utilized *prior to payment* and not subsequently." (Emphasis added).

The opportunities for review offered by the Secretary after he had determined that the defendants were liable for improper payments were admirable efforts to settle the claim without litigation.  These efforts, however, cannot be taken as barring the defendants' right to contest both the fact and amount of liability without a clear-cut expression of Congressional intent to that effect.  The court has been directed to a contrary holding in *United States v. Schreiber*, N.D. Ohio, 5/2/80, with which it respectfully disagrees.

The Government by its motion for summary judgment seeks also an order of the court precluding as a matter of law various defenses which the defendants have raised. Except for the defense of the statute of limitations, it is the opinion of the court that it is premature to attempt to resolve the legal merits of such other defenses.

For the foregoing reasons, the Government's motion for a summary judgment will be denied.

■   The defendants' motions for summary judgment are based on the contention that the Government's claims are barred by the applicable statute of limitations.  Section 2415(a) of Title 28, United States Code, provides:

"Subject to the provisions of section 2416 of this title,  .  .  . every action for money damages brought by the United States  .  .  . which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues."

The Government takes the position that its cause of action did not accrue until the end of the audit which identified the amount of the overpayment and even thereafter for a period of six months.  One problem with the Government's position is that if accepted it would indefinitely postpone the running of the statute of limitations because no audit is required under the provisions of Part B of the Medicare Act.  See *Szekely v. Florida Medical Association, supra*, where the court stated:

".  .  . Part B, does not have any provisional payment or annual audit or adjustment system, so there can be no implication that Congress meant to enact a limited form of recoupment from providers." (p. 349).

The other problem is that it is founded on the assumption that the Government could not commence its suit until it had offered defendants an administrative hearing of some sort.  This is without support in the Medicare · Act, the regulations adopted thereunder, and the applicable statute of limitations.

Since the Medicare Act does not authorize any payment for medically unnecessary

services, 42 U.S.C. § 1395y(a)(1), the Government's right to recover payment for same accrues when the payment is made. Hence the statute of limitations runs from the date of payment, unless its running is postponed by the provisions of Section 2416(c) of Title 28. The policy which underlies statutes of limitation was described by the United States Supreme Court recently in the following language:

". . . they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *United States v. Kubrick*, 1979, 444 U.S. 111, 117–125, 100 S.Ct. 352, 357, 62 L.Ed.2d 259, 266.

The same policy consideration requires a strict or at least not fanciful construction of 28 U.S.C. § 2416(c).

In the present case, it is reasonable to assume that no official of the Government knew when payments were made to Bragg and Kaye that they were for medically unnecessary services. The question thus becomes whether or not there can be identified from the record some point in time when "facts material to the right of action" were known or reasonably could have been known by a responsible official of the Government. This involves the subsidiary inquiry as to what are "facts material" for purposes of 28 U.S.C. § 2416(c). In *United States v. Kubrick, supra*, the court said that a cause of action accrued and the limitation provisions of 28 U.S.C. § 2401(b) started when the claimant knew that he had been injured and the identity of the probable cause of his injury. By analogy to the present case, "facts material" would be such facts as would provide a responsible official with knowledge that improper payments have been made and the identity of the recipient. When such knowledge is in the hands of a responsible Government official, the tolling provisions of Section 2416(c) should cease to operate.

The affidavits supplied by the Government in support of its motions show that on 9 September 1970 a refund demand was made on Bragg for overpayments for services rendered in 1967, 1968 and 1969. A similar demand was made on Kaye on 28 August 1970 for overpayments made with respect to services rendered by him in 1968 and 1969. On 2 February 1971, officials of Blue Cross provided FOMA an expanded sample of patient charts for the medicare patients of Bragg and Kaye who were treated during the years 1967 through 1969, and on 27 April 1971, FOMA reported to Blue Cross that improper payments had been made for medically unnecessary services rendered by Bragg and Kaye in the years 1967 through 1969. The Government, therefore, through the agency of Blue Cross, knew no later than the end of April 1971 that improper payments had been made to Bragg and Kaye for the years 1967 through 1969.

Based upon the foregoing facts which appear to exist without controversy, this court concludes that the statute of limitations started to run with respect to payments made by the Government prior to 30 April 1970 to Bragg and Kaye for medically unnecessary services rendered by them in the years 1967 through 1969 and no recovery may be had for any such payments by reason of the statute of limitations.

With respect to payments made by the Government for medically unnecessary services rendered by Bragg and Kaye in the year 1970, the record is not sufficiently clear to permit a conclusion as to the commencement of the statute of limitations. For this reason, it would be inappropriate to grant the defendants' motions for summary judgment. However, pursuant to the provisions of Rule 56(d) of the Federal Rules of Civil Procedure, the court will enter an order on those motions limiting the issues for trial in accordance with the foregoing conclusions.

## ORDER

On the motion for summary judgment filed by the defendant Jackson B. Bragg on

26 July 1979, and on the authority of Rule 56(d), Fed.R.Civ.P., and for the reasons stated in the Memorandum of Decision of even date herewith, it is

ORDERED that the claims asserted against the defendant for recovery of payments under the Medicare Act, Part B, made for services rendered by the defendant in the years 1967 through 1969 which payments were made prior to 30 April 1971 are barred by the applicable statute of limitations, 28 U.S.C. § 2415(a). This action may continue, however, with respect to any other payments for medically unnecessary services rendered by the defendant, it appearing that there may be a material issue of fact as to whether or not the statute of limitations bars the Government's claim to recover for such other payments. This ruling is without prejudice to the right of the defendant to reassert his motion for summary judgment as to such other payments in the event that same may be adequately supported by uncontroverted facts.

Except as above stated, it is further ordered that said motion is denied.