**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Morton SANET, M.D.,**
**Defendant-Appellant.**

No. 81–5192
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 1, 1982.
Rehearing Denied March 10, 1982.

---

Mandina & Lipsky, Michael A. Lipsky, Miami, Fla., for defendant-appellant.

Patricia D. Kenny, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before RONEY, KRAVITCH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The United States filed this action under 28 U.S.C. § 1345 to recover $23,497.23 in Medicare, Part B, payments made to appellant Morton Sanet, M.D. during the years 1972, 1973, 1974 and 1975. The district court denied appellant's motion to dismiss which asserted, *inter alia*, that a statistical sampling procedure utilized by the carrier violated his right to due process. The court held that it was without jurisdiction to review determinations of the Secretary with respect to benefits payable under the Medicare Act. Thereafter, the court granted the government's motion for partial summary judgment with respect to the overpayment of $6,518.78 calculated for the years 1974 and 1975.[1]

Dr. Sanet appeals. He attacks the district court's refusal to hear his claims and the use of a statistical sampling technique as violative of his due process rights. We affirm.

### Statement of Facts

Title XVIII of the Social Security Act (the "Medicare" program)[2] provides reimbursement for medical care to the aged and to certain disabled persons under age 65.[3] Part B provides supplementary medical insurance benefits available on a voluntary basis to those eligible for Part A benefits upon payment of monthly premiums.[4] These premiums, together with contributions from the federal government go into the Federal Supplementary Medical Insur-

---

1. The district court stayed the proceedings with respect to the government's claims for 1971, 1972, and 1973 pending Sanet's exhaustion of any administrative remedies made available to him by the court in the nationwide class action, *McClure v. Harris,* 503 F.Supp. 409 (N.D.Cal. 1980).

2. 42 U.S.C. § 1395 *et seq.*

3. Part A provides hospital insurance benefits. 42 U.S.C. §§ 1395c–1395i.

4. 42 U.S.C. § 1395r(b) and (c).

ance Trust Funds [5] from which benefits are paid under Part B. Coverage includes physicians' services and various other medical and health services generally not covered by Part A.

Part B is administered through fiscal intermediaries (carriers),[6] private entities, like Blue Shield of Florida, Inc. Beneficiaries are reimbursed, or doctors holding assignments from them are paid, on the basis of the amounts charged, subject to the carriers' responsibility to establish appropriate reasonable amounts.[7] The carrier is a fiscal conduit of the Supplementary Medical Insurance Trust Fund without vested interest in the reimbursement of submitted claims, but contractually obligated to the Secretary to make a determination of "coverage" and to make payment thereon.[8] Because it would not be administratively feasible to routinely require, in advance of payment, full medical documentation of the services, claims are paid based on the physician's certification that the services he performed were medically necessary.[9] The physician is on notice that the assignment he takes from the patient is valid only where the services provided are medically necessary.[10] To insure that Medicare funds are expended only for services that are reasonable and necessary,[11] the carriers have developed the capacity for detecting deviations in a physicians' practice from norms established by his peers. Blue Shield of Florida maintains physician "profiles" for each practitioner who treats Medicare beneficiaries. These profiles can alert the carrier to a physician who is providing services more frequently than his contemporaries. When an unusual pattern of practice is detected, the carrier conducts an in-depth post-payment review.

The Act provides an opportunity for a fair hearing to a beneficiary (or an assignee) if the amount in controversy is $100 or more, the requested reimbursement is denied, or the amount of reimbursement is in controversy or is not acted upon with reasonable promptness.[12]

From 1971 through 1975, Blue Shield of Florida made payments to Dr. Sanet on claims assigned to him by Medicare beneficiaries. The carrier reviewed a sample of claims which Dr. Sanet had submitted during 1974 and 1975. After consultation with the Florida Medical Association and the Dade County Medical Association Peer Review Committee, the carrier concluded that Dr. Sanet was overpaid in the amount of $4,009.66 during 1974 and $2,509.12 during 1975, because certain treatments were not medically reasonable and necessary. By letter dated January 15, 1979, the carrier advised Dr. Sanet of the overpayment determination for the years 1974 and 1975. Although Dr. Sanet was advised in the letter of his right to an administrative hearing, he did not request a hearing and the six-month deadline for making such a request passed.

*Judicial Review of Medicare Findings*

Dr. Sanet attacks the summary judgment. He asserts that the district court erred in determining that it was without jurisdiction to consider his claim that Blue Shield's sampling techniques violate due process.

The Medicare Act incorporates some procedural provisions of the Social Security

---

**5.** 42 U.S.C. § 1395t.

**6.** 42 U.S.C. § 1395u.

**7.** 42 C.F.R. § 405.501 *et seq.*

**8.** 42 U.S.C. § 1395u(a).

**9.** 42 U.S.C. § 1395n(a)(2).

**10.** *Szekely v. Florida Medical Association*, 517 F.2d 345, 348 (5th Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).

**11.** 42 U.S.C. §§ 1395u and 1395y.

**12.** 42 U.S.C. § 1395u(b)(3)(C). *See also* 42 C.F.R. § 405.801(a).

Act.[13] A decision of the Secretary after a hearing is final.

(h) The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

Judicial review of Social Security benefit decisions is provided for in 42 U.S.C. § 405(g), but this section was not incorporated into the health insurance subchapter.[14] 42 U.S.C. § 1395 limits review to determinations of entitlement under either Part A or Part B or determinations of amount of benefits under Part A. Congress intentionally provided for no judicial review of Part B reimbursement determinations.[15]

> Under the supplementary plan, carriers, not the Secretary, would review beneficiary complaints regarding the amount of benefits, and the bill does not provide for judicial review of a determination concerning the amount of benefits under Part B.... It is intended that the remedies provided by these review procedures shall be exclusive.

Report on the Senate Committee on Finance, S.Rep.No.404, Part I, 89th Cong., 1st Sess. 54–55 (1965) U.S.Code Congressional & Administrative News, pp. 1943, 1995.

Senator Bennett, a member of the Senate Finance Committee which drafted the 1972 amendments, explained the purpose of the bill "was to reconfirm the original intention of the law that the courts can determine only eligibility," adding:

> The situations in which Medicare decisions are appealable to the courts were intended in the original law to be greatly restricted in order to avoid overloading the courts with quite minor matters. The law refers to "entitlement" as being an issue subject to court review and the word was intended to mean eligibility for any benefits of Medicare but not to decisions on a claim for payment for a given service.

118 Cong.Rec. 33992 (October 5, 1972).

This court, en banc, has considered the reimbursement scheme in *Dr. John T. MacDonald Foundation, Inc. v. Califano*, 571 F.2d 328 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978). There we said:

> The question can be framed quite simply: Does 42 U.S.C. § 405(h), incorporated by reference into the Medicare Act by 42 U.S.C. § 1395ii, preclude district court review of a decision by the Secretary?

*Id.* at 330. By a divided court sitting en banc, we answered the question in the affirmative, at least in an action with 28 U.S.C. § 1331 as the basis for jurisdiction. However, since appellant in that case urged a deprivation of substantive due process, a constitutional claim, our court referred the matter to the Court of Claims which had held that it had jurisdiction of such claims pursuant to 28 U.S.C. § 1491 in its decision *Whitecliff, Inc. v. United States*, 536 F.2d 347 (Ct.Cl.1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). The appellant here asserts that *MacDonald* does not control since the government has sued under 28 U.S.C. § 1345 and that defendant would be denied procedural due process if

---

**13.** 42 U.S.C. § 1395ii adopts 42 U.S.C. § 405(a), (d), (e), (f), (h), (i), (j), (k), and (*l*) into the Medicare subchapter.

**14.** *See* n.13 *supra*.

**15.** In 1973 Congress provided for a Provider Reimbursement Review Board as a dispute resolution device with judicial review. The procedures are limited to provider disputes under Part A. Part B assignees, such as Dr. Sanet, are not covered. 42 U.S.C. § 1395*oo*.

he could not defend against the claim of the government once the court undertook jurisdiction of the case pursuant to § 1345. Thus, a second due process claim, denial of the opportunity to defend, is added to the sampling method claim. A district court in this circuit has distinguished § 1345 from § 1331:

> The issue before this court is whether or not in an action brought by the Government for recoupment where the court has subject matter jurisdiction under 28 U.S.C. § 1345, the court is precluded by §§ 1395ii and 405(h), Title 42, United States Code, from reviewing the merits of the claim. If those statutes are construed to permit the Government to seek judicial relief on the one hand and on the other to deny the defendant the right to judicial hearing on the merits, their constitutionality is highly questionable. However, the court does not need to decide the constitutional issue because 42 U.S.C. § 405(h) is subject to a reasonable interpretation which would allow this court to avoid it. The last sentence of Section 405(h) addresses itself specifically to judicial proceedings brought under 28 U.S.C. § 1331. It is reasonable to infer from the specific nature of that language that it states the extent to which Congress intended to preclude judicial review of decisions by the Secretary. It is, therefore, the opinion of this court that where the court's jurisdiction is predicated on 28 U.S.C. § 1345, the court is not precluded by §§ 1395ii and 405(h), supra, from reviewing the merits of the claim.

*United States v. Bragg*, 493 F.Supp. 470, 473 (M.D.Fla.1980).

The government argues that *Bragg* was wrongly decided. 42 U.S.C. § 405(h) provides in part: "No findings of fact or decision of the Secretary shall be reviewed except as herein provided." This, the government argues, clearly withholds jurisdiction

from the district court. This court has recognized the congressional intent.

The legislative history of the Medicare Act evinces that Congress intended to disallow judicial review of Part B claims regarding reimbursement amounts.

> [T]he bill does not provide for judicial review of a determination concerning the amount of benefits under part B where claims will probably be for substantially smaller amounts than under part A.

S.Rep.No. 404, 89th Cong., 1st Sess. 54–55 (pt. 1) (1965), *reprinted in* [1965] *U.S.Code Cong. & Ad.News*, pp. 1943, 1995.

*Bussey v. Harris*, 611 F.2d 1001, 1005 n.5 (5th Cir. 1980).

The holding in *Bragg* would seem to undermine the structure set up by Congress. It is inconsistent to prevent a party from obtaining judicial review of an administrative determination while permitting a judicial determination when a party avoids the administrative determination and waits to be sued. The Congress has established elaborate procedures designed to insure that medical services are provided to those who require them and that physicians are reasonably compensated for providing the services. The Medicare program has a tremendous impact on the health care industry. The system can succeed only if health care professionals are willing to participate. A reasonable compensation encourages such participation; overcompensation promotes fraud and waste. The Medicare system is designed to insure reasonable fees by providing for charge comparisons and peer review. Congress has wisely determined that these determinations are best left to experts.

If Dr. Sanet's claim had constitutional dimensions, the absence of a provision for judicial review would raise serious doubts about the validity of the statute.[16] That problem was avoided in *MacDonald* because

---

16. *See Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Dr. John T. MacDonald Foundation, Inc. v. Califano*, 571 F.2d 328, 332 (5th Cir. 1978). *See also Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522; *Johnson v. Robison*, 415

transfer of the case to the Court of Claims was possible.[17] We may avoid the problem as well. Upon his involuntary payment of the disputed amounts, Dr. Sanet would be able to pursue a claim for repayment in the Court of Claims. *See Northern Pacific Railroad Co. v. United States,* 18 F.Supp. 543, 85 Ct.Cl. 42, *cert. denied,* 302 U.S. 750, 58 S.Ct. 270, 82 L.Ed. 580 (1937). We are not required therefore to decide "whether Congress has, or could constitutionally have, precluded judicial review of a substantial constitutional claim, an issue that the Supreme Court has not resolved." *Bussey v. Harris,* 611 F.2d 1001, 1005 (5th Cir. 1980) (footnotes omitted). *See Pushkin v. Califano,* 600 F.2d 486, 492 (5th Cir. 1979); *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d at 331 n.5, 332.

This is not a case of the government suing a citizen for a debt. This is an action by the government seeking reimbursement of an overpayment made on an assigned claim, with knowledge on the part of the assignee that any dispute about amount would be reconciled by administrative hearing in the event the government questioned the necessity or reasonableness of the treatment by the physician.

It is clear that Congress intended that "no findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency . . . ." It would defeat that constitutional decision of Congress to allow such a determination in an action brought by the government under § 1345. We can not permit such a circumvention of congressional intent. Dr. Sanet cannot defeat the statutory scheme by dropping out of the Medicare program and refusing to reimburse the carrier. A *reimbursement determination,* for which judicial review is not available, cannot be judicially reviewed when recast as a challenge to the *method* of determination. Under these circumstances the district court was correct.

We AFFIRM.

U.S. 361, 366–67, 94 S.Ct. 1160, 1165–66, 39 L.Ed.2d 389 (1974) (the availability of judicial review over constitutional claims is presumed; the presumption would be rebutted only by clear and convincing evidence of Congress' intent).

17. Dr. Sanet has filed suit in the Court of Claims. The record is unclear; we assume that he seeks a declaration that the use of the sampling technique violates due process.