821 F.2d 1517
 18 Soc.Sec.Rep.Ser. 160, Medicare&Medicaid Gu 36,403
KARNAK EDUCATIONAL TRUST d/b/a Lee County Chiropractic and
Medical Center, Michael Price, D.P.M., Mario De Marco, M.D.,
Alexander Cavaliere, D.C., Chester Thompson, M.D., and
Koussay Baaj, M.D., Plaintiffs-Appellants,
v.
Otis R. BOWEN, as Secretary of Health and Human Services,
United States Department of Health and Human
Services, and Blue Cross and Blue Shield
of Florida, Inc., Defendants-Appellees.
 No. 86-3238.
 United States Court of Appeals, Eleventh Circuit.
 July 20, 1987.
 
 Laurence B. Liebowitz, Liebowitz & Royster, Elmsford, N.Y., for plaintiffs-appellants.
 Virginia M. Covington, Asst. U.S. Atty., Tampa, Fla., John C. Hoyle, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before TJOFLAT and HILL, Circuit Judges, and LYNNE*, Senior District Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 This case presents a challenge by the plaintiffs, the Karnak Educational Trust (Karnak) and various physicians[1] it employs, to a decision of the Secretary of the Department of Health and Human Services (Secretary) and his intermediary, Blue Cross and Blue Shield of Florida, Inc. (Blue Cross). The plaintiffs object to a decision of the Secretary and Blue Cross to suspend Medicare reimbursements to the plaintiffs pending an administrative hearing (before an officer designated by Blue Cross) to determine whether the reimbursements should be used to set off amounts owed, due to previous overpayments, by Karnak to the Secretary. The district court held that it lacked subject matter jurisdiction and dismissed the case. We conclude that the district court did have subject matter jurisdiction, but affirm its dismissal on another ground.
 
 I.
 
 2
 The plaintiff physicians are employed by a clinic Karnak owns and operates in North Fort Myers, Florida.[2] They provided services to patients enrolled in Part B of the Medicare Program[3] and received assignments of their patients' claims for reimbursement.[4] On August 8 and October 28, 1985, Blue Cross, the local Medicare carrier for the Secretary,[5] notified the previous owners of Karnak's clinic that an audit had disclosed substantial Medicare overpayments to the clinic. Believing that Karnak was the alter ego of the previous owner, and thus liable to the Secretary for the overpayment, Blue Cross advised Karnak and the plaintiff physicians that it would suspend payment on all of their unpaid claims and any future claim they might submit. Blue Cross stated that it was taking the action pursuant to 42 C.F.R. Secs. 405.370-.372 (1985).
 
 
 3
 Karnak and the physicians brought this suit against the Secretary and Blue Cross on March 27, 1986. They alleged that because most of their patients relied on Medicare, Karnak would go out of business if Blue Cross continued to withhold reimbursement monies while the plaintiffs awaited an administrative hearing. The plaintiffs contended that the withholding violated their right to due process of law and sought a preliminary and permanent injunction ordering the defendants to pay their withheld claims pending a final administrative or judicial decision. The district court concluded that it lacked subject matter jurisdiction over plaintiffs' claim and dismissed the case.II.
 
 
 4
 The present case concerns Part B of the Medicare Act, 42 U.S.C. Secs. 1395j-1395w (1982 & Supp. III 1985) (Part B), and those miscellaneous provisions of Part C, 42 U.S.C. Secs. 1395x-1395zz, that relate to Part B. Part B establishes a voluntary insurance program, funded by a combination of enrollee premiums and federal government money, that allows individuals to broaden their Medicare coverage. Congress has assigned to the Secretary the task of administering the Medicare program, see 42 U.S.C. Sec. 1395kk(a), and has given him rule-making authority, see 42 U.S.C. Sec. 1395hh.
 
 
 5
 The Medicare program allows a medical supplier either to bill the patient directly, who will pay the supplier and then seek reimbursement from Medicare, or to accept from the patient an assignment of the patient's right to payment. See 42 C.F.R. Secs. 405.1672-.1675 (1986). Generally, Medicare pays eighty percent of the "reasonable charg[e]" of the supplier's services. See 42 U.S.C. Sec. 1395l(a)(1).
 
 
 6
 Under 42 U.S.C. Sec. 1395u(a), the Secretary may "enter into contracts with carriers," so that he can dispense Medicare benefits with "maximum efficiency and convenience." See also generally 42 C.F.R. pt. 421 (1986). A carrier's function is to ensure the validity of a Medicare claim and to make the appropriate payment. Because of the large number of Medicare claims, carriers generally do not scrutinize each submission; rather, they rely on the medical supplier's certification that the claim is valid and on periodic audits of the supplier's records. See generally United States v. Sanet, 666 F.2d 1370, 1372 (11th Cir.1982). If the carrier discovers evidence of overpayment, fraud, or willful misrepresentation on the part of the supplier, it may suspend payments of pending claims. See 42 C.F.R. Secs. 405.370-.373 (1986). The withheld payment is placed in a special account, and if the carrier determines that the medical supplier has been overpaid, it uses the withheld payment to reimburse the Government for the overpayments.
 
 
 7
 If the carrier intends to withhold a payment because of past overpayment, it must so notify the supplier, explaining its reason. See 42 C.F.R. Sec. 405.371(a). The supplier then has fifteen days in which to reply. Id. If the carrier does not receive a response within fifteen days, it automatically suspends payment, see id., until the overpayment is satisfied or the suspension is set aside, 42 C.F.R. Sec. 405.373(a).
 
 
 8
 The Medicare statutory scheme provides for a "fair hearing" if the medical supplier wants to contest the suspension, provided the amount in controversy exceeds one hundred dollars. See 42 U.S.C. Sec. 1395u(b)(3)(C); 42 C.F.R. Sec. 405.820 (1986). An officer designated by the carrier conducts this hearing. 42 C.F.R. Sec. 405.823 (1986). At the hearing, the parties may present testimony, documentary evidence, briefs, and argument. See 42 C.F.R. Sec. 405.830(a), (d) (1986). The hearing officer then makes his decision, which "shall be made in writing and contain findings of fact and statement of reasons." 42 C.F.R. Sec. 405.834 (1986). The hearing is "final and binding upon all parties." 42 C.F.R. Sec. 405.835 (1986). The statutory scheme does not provide for judicial review. See United States v. Erika, Inc., 456 U.S. 201, 203, 102 S.Ct. 1650, 1652, 72 L.Ed.2d 12 (1982).
 
 III.
 
 9
 Plaintiffs brought their complaint solely to protest "the cessation of income during the period of time in which they pursue their administrative remedies with regard to the suspension of payments." They admitted that they were awaiting administrative review, and they did not allege in their complaint that this review was being unreasonably delayed. The essence of plaintiffs' claim, therefore, is that the defendants must continue to honor the plaintiffs' demands for reimbursement while they investigate the overpayments in question. Under the plaintiffs' theory, the defendants must assume the risk of uncollectibility if the hearing officer determines that the plaintiffs were not entitled to payment.
 
 
 10
 Both plaintiffs and defendants concede that the federal courts lack jurisdiction to review the Secretary's determination of reimbursement amounts. See Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) (fact that carrier appoints hearing officers who settle reimbursement amount disputes does not violate due process, so Constitution does not require further administrative or judicial proceedings); United States v. Erika, Inc., 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982) (United States Court of Claims lacked jurisdiction to hear supplier of medical services claim that carrier's determination of "reasonable charge" violated Medicare statute and regulations). Federal courts do, however, have jurisdiction to decide non-frivolous constitutional claims brought by Part B participants. See Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).
 
 
 11
 Although we find the question to be quite close, we cannot say that the plaintiffs' claim is so utterly frivolous that it cannot support federal jurisdiction. See, e.g., Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir.)[6] (favoring dismissing claims on their merits, rather than on jurisdictional basis), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3564 (2d ed. 1984) ("The test for dismissal [on jurisdictional grounds] is a rigorous one...."). Nevertheless, in view of the extensive regulatory scheme surrounding Part B, and the Government's interest in protecting Part B funds, we conclude that the plaintiffs' claim is so clearly lacking in merit that it fails to state a cause of action. See Southpark Square Ltd. v. City of Jackson, 565 F.2d 338, 343 n. 7 (5th Cir.1977) ("Although a federal question substantial enough to confer jurisdiction but not substantial enough to state a cause of action is difficult to conceive, the doctrine is well established."), cert. denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978).
 
 
 12
 When plaintiffs' claim is so meritless that they could not possibly win relief, " 'a federal appellate court is justified in resolving an issue not passed on below.' " Wong v. Bell, 642 F.2d 359, 362 (9th Cir.1981) (quoting Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)). Cf. Marine Coatings of Alabama, Inc. v. United States, 792 F.2d 1565, 1567 (11th Cir.1986) (district court's erroneous dismissal of case for lack of subject matter jurisdiction treated on appeal as dismissal for failure to state a claim). In the present case, both sides argued the substantiality, and the merits, of the plaintiffs' claim to the district court and to this court. We believe that Supreme Court precedent controls the disposition of this case, and thus affirm on the merits the district court decision.
 
 
 13
 In Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), three Part B claimants brought suit, alleging that the Part B hearing procedures violated their right to due process. Specifically, the claimants challenged the procedure under which persons designated by the same carrier whose decision to deny the claim was at issue appointed the hearing officer who conducted the final and non-reviewable hearing regarding the carrier's non-reimbursement decision. The district court agreed with the claimants, and ordered that all discontented claimants receive a de novo hearing conducted by an administrative law judge.
 
 
 14
 On direct review, the Supreme Court reversed. The Court examined the constitutional claim against the standard of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which set out three factors relevant to the due process inquiry:
 
 
 15
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 16
 McClure, 456 U.S. at 193-94, 102 S.Ct. at 1669 (quoting Eldridge, 424 U.S. at 335, 96 S.Ct. at 903 (citation omitted)). The McClure Court accepted, arguendo, the district court's conclusion that the claimants had a "considerable" interest in Part B payments and that the additional governmental costs of providing an additional hearing would not be unduly burdensome. McClure, 456 U.S. at 198, 102 S.Ct. at 1671. Nevertheless, the Court found little proof that additional, court-imposed, procedures would lessen errors in reimbursement decisions, and thus held that the congressionally mandated scheme provided all of the process that was due.
 
 
 17
 Using the Eldridge test, we too find nothing unconstitutional in the existing procedures at issue in this case. First, when a medical supplier submits a claim for reimbursement, he clearly does so with knowledge that he is not guaranteed automatic recovery. Whether the carrier rejects the claim on the ground that it is fraudulent, or not covered under Part B, for example, the medical supplier is aware that his submission is subject to scrutiny to ensure that he is entitled to be reimbursed. Thus, a supplier has little, if any, private interest in immediate reimbursement; he is, or should be, aware that Part B does not promise that he will always be paid upon his demand. Second, the carrier, who does not profit from a decision to withhold reimbursement, see McClure, 456 U.S. at 196-97, 102 S.Ct. at 1670-71, suspends reimbursement only after concluding that the supplier is not entitled to payment. Thus, we see little probable value to be gained, in an attempt to reduce erroneous decisions, by requiring the Government to continue to reimburse a medical supplier while he awaits a fair hearing on his claim that the carrier erred. Finally, we conclude that the Government has a substantial interest in its ability to suspend reimbursement payment pending the outcome of a fair hearing. We have little doubt that were the Government not able to suspend such payment, it would face the risk of not collecting the full amount of its prior overpayment.
 
 IV.
 
 18
 We conclude that the plaintiffs' claim is not so frivolous as to deprive the district court of subject matter jurisdiction. Nevertheless, because we believe that the plaintiffs' claim fails to state a cause of action, we affirm the judgment of the district court.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 The plaintiffs include three medical doctors, one podiatrist, and one chiropractor. We refer to them collectively as the physicians or the doctors
 
 
 [2]
 Karnak contends that the previous owner of the clinic, not the plaintiffs, received the overpayments the Secretary is attempting to recoup from Karnak and the plaintiff physicians. Accordingly, Karnak argues that the Secretary has no right to a set-off against reimbursements plaintiffs are entitled to receive for services they have performed. Our analysis does not require us to address this contention
 
 
 [3]
 The Health Insurance for the Aged and Disabled Act, 42 U.S.C. Secs. 1395-1395zz (1982 & Supp. III 1985) (the Act), commonly called Medicare, established a system through which the federal government subsidizes medical care for elderly and disabled people. The present case concerns part B of the Act, Secs. 1395j-1395w, which we discuss in greater detail in Part II. of this opinion
 
 
 [4]
 The plaintiff physicians in turn assigned these claims to Karnak, which submitted them to Blue Cross for payment. Whether they assigned the claims to Karnak without recourse is unclear. We therefore treat both Karnak and the plaintiff physicians as having an interest in the Medicare payments that the Secretary is withholding from Karnak and the physicians
 
 
 [5]
 See infra Part II
 
 
 [6]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981