**Raul ROMAGUERA, M.D., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 813–86C.**

United States Claims Court.

May 16, 1988.

Charles C. Powers, West Palm Beach, Fla., for plaintiff.

Jane W. Vanneman, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

FUTEY, Judge.

This action, arising out of a dispute over reimbursement under the Medicare Act, is before the court on defendant's motion to dismiss and motion for summary judgment. Plaintiff, a medical doctor, alleges that defendant's agent and administrator, Blue Cross and Blue Shield of Florida, has wrongfully withheld payments owed to him on Medicare (Part B) claims he has submitted for pathology work, applying the sums against an overpayment which was improperly and unconstitutionally determined by defendant. Defendant asserts that this court lacks jurisdiction because plaintiff has already been accorded an administrative hearing, in accordance with the Medicare Act, and there is no statute or regulation providing for judicial review of the determination resulting therefrom. Nor does plaintiff's action, according to defendant, present a substantial constitutional claim entitled to a *de novo* review by this court. For the reasons stated hereinafter, the court grants defendant's motion to dismiss the complaint.

## FACTS

Medicare, enacted as Title XVIII of the Social Security Act in 1965, consists of two distinct components—hospital insurance benefits provided under Part A and supplementary medical services provided under Part B. 42 U.S.C. § 1395 *et seq.* It is the Part B program, involving benefits primarily for physicians' services, which are the subject of this litigation.

For the administration of Part B, the Secretary of Health and Human Services (HHS) is authorized to act through "carriers," private entities which perform various functions such as determining appropriate rates and amounts of payments, and making such payments. 42 U.S.C. § 1395 u. Blue Cross and Blue Shield of Florida is the carrier in the case at bar. If a Medicare beneficiary or a provider of services (physician) holding an assignment from the beneficiary is dissatisfied with the carrier's determination of a claim for payment, the beneficiary/provider may request a *de*

*novo* hearing before a Medicare Hearing Officer (MHO).

Plaintiff, Dr. Raul Romaguera, is a practicing physician in Lake Worth, Florida, who had a contract with Doctors Hospital of Lake Worth to provide clinical pathology services. Pursuant to the contract Dr. Romaguera sent bills for his services to Blue Cross and Blue Shield under Medicare Part B. In March 1982 the hospital gave Dr. Romaguera 120 days notice of its intent to terminate the contract. Plaintiff's contract was duly terminated in July 1982, and Dr. Romaguera was cut from the hospital's medical staff. On November 15, 1982, however, Dr. Romaguera obtained a court order restoring him to the medical staff at Doctors Hospital.

Meanwhile, Doctors Hospital had contracted with another professional group in August 1982 to provide the services previously provided by Dr. Romaguera. Under the new arrangement, which involved a different mode of compensation for the physicians, the hospital was reimbursed by Blue Cross and Blue Shield under Medicare Part A. After his reinstatement Dr. Romaguera obtained authorization from some of the physicians at Doctors Hospital to provide clinical and pathology services for his patients. He then proceeded to bill Blue Cross and Blue Shield in the old manner under Medicare Part B.

By letter dated January 31, 1984, Blue Cross and Blue Shield advised Dr. Romaguera that "This situation constitutes duplicate billing on your part." Since Doctors Hospital was already being paid for the clinical pathology services rendered to his patients, Dr. Romaguera was requested to "return the $18,266.68 paid to you in error" (between November 15, 1982 and October 1, 1983).

Exercising his right of review under 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. § 405.801(a), Dr. Romaguera requested a "fair hearing" to review the carrier's determination. This hearing was held on June 12, 1984, before a Medicare Hearing Officer (MHO). In a decision issued on July 3, 1984, the MHO affirmed the carrier's determination that Dr. Romaguera should re-

fund the amount of $18,266.68 to the Medicare Part B program.

By letter dated February 14, 1985, the Health Care Financing Administration of HHS demanded that Dr. Romaguera repay the $18,266.68, plus interest. Dr. Romaguera refused, and on July 17, 1985, Blue Cross and Blue Shield of Florida began withholding payment on other claims submitted by Dr. Romaguera as a means to recoup the overpayment. By March 17, 1986, according to an affidavit of the Overpayment Recovery Specialist in the Health Care Financing Administration of HHS, $4,168.72 had been withheld, of which $3,310.35 had been applied against the overpayment principal and $858.37 against accrued interest.

Meanwhile, the United States filed suit in the U.S. District Court for the Southern District of Florida seeking a judgment against Dr. Romaguera for the amount of overpayment. Dr. Romaguera counterclaimed for $2,441.72, the amount the government had recouped at the time. On November 18, 1986, the U.S. Magistrate issued a Report and Recommendation concluding that the district court lacked jurisdiction to review overpayment determinations under Medicare Part B, but recommending that the case be transferred to the Court of Claims (sic) because defendant had alleged a constitutional claim based on denial of due process. Following this recommendation, the district court judge ordered the case transferred to the "Court of Claims" on December 9, 1986.

Dr. Romaguera filed an Amended Complaint in the U.S. Claims Court on January 28, 1987, claiming that the determination of the Medicare Hearing Officer was constitutionally infirm due to "bias" and "prejudice" against plaintiff, and that the monies withheld by the government constituted a "taking and deprivation of property in violation of Plaintiff's Due Process rights as guaranteed by the Fifth Amendment." In a Second Amended Complaint filed on March 26, 1987, Dr. Romaguera also asserted that the MHO's decision was unconstitutional because the MHO retroactively applied Medicare regulations which did not

take effect until October 1, 1983. The government filed its motion to dismiss and motion for summary judgment on April 6, 1987.

## DISCUSSION

In its Report and Recommendation to the district court, the U.S. Magistrate cited two federal appeals court opinions, *Dr. John T. MacDonald Foundation, Inc., d/b/a Doctors' Hospital,* a Florida Corporation not for profit *v. Joseph A. Califano, Jr., Secretary of Health, Education, and Welfare,* Blue Cross Blue Shield, 571 F.2d 328 (5th Cir.1978) and *United States of America v. Morton Sanet, M.D.,* 666 F.2d 1370 (11th Cir.1982), holding that the district court could not exercise judicial review of administrative determinations with respect to benefits payable under Medicare Part B. The issue before those courts was the scope of § 405(h) of the Social Security Act, incorporated by reference into the Medicare Act by 42 U.S.C. § 1395ii, which provides that:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal or governmental agency *except as herein provided.* No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter. (Emphasis added.)[1]

While holding that the above section precluded district court review of the Secretary's determinations on Medicare Part B claims, the courts in *MacDonald* and *Sanet* observed that the Court of Claims in *Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), had decided that it *was* a proper forum for

judicial review if such claims raised constitutional questions. *MacDonald,* 571 F.2d at 332; *Sanet,* 666 F.2d at 1374–75.

In *Whitecliff,* which involved a reimbursement dispute between the government and a Medicare provider, the Court of Claims held that, notwithstanding the limitations of § 405(h), *supra,*

> a provider may obtain judicial review, under the general jurisdictional provisions which are applicable, at least so far as to ensure compliance with statutory and constitutional provisions. In this court, 28 U.S.C. § 1491 (the Tucker Act) is the pertinent jurisdictional provision both because of plaintiff's contract with the Government and also because the Medicare legislation, fairly read, mandates appropriate payment to providers. Cf. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

*Whitecliff,* 210 Ct.Cl. at 58, 536 F.2d 347. Relying on this authority, and the fact that the appellants in *MacDonald* and *Sanet* both alleged constitutional claims based on due process violations, the 5th Circuit in *MacDonald* ordered that case transferred to the Court of Claims, while the 11th Circuit in *Sanet* observed that the appellant could bring an action in the Court of Claims upon his involuntary payment of the disputed sums. In the view of the U.S. Magistrate considering the district court case of *United States v. Romaguera,* CASE NO. 86–8048–CIV–PAINE, the above cases were controlling and, insofar as Dr. Romaguera had alleged a denial of substantive due process, militated in favor of a transfer of the case to the "Court of Claims." The district court acted in accordance with this recommendation.

\*    \*    \*    \*    \*    \*

■ The transfer of this case here by the district court, of course, does not *ipso facto* confer jurisdiction upon the Claims Court. This court must make its own determination as to whether it has jurisdic-

---

1. 42 U.S.C. § 1395ff of the Medicare Act does specifically provide for judicial review of determinations by the Secretary as to an individual's *eligibility* for benefits under *Parts A and B,* as well as the *amount* of benefits under *Part A.* No such provision with respect to the amount of

benefits under Part B existed prior to the enactment of the Omnibus Budget Reconciliation Act of 1986, which affords limited judicial review for items and services furnished *after January 1, 1987.* Pub.L. 99–509, Title IX, § 9341, 42 U.S.C. § 1399ff (1986).

tion over the action. *Singleton v. United States*, 6 Cl.Ct. 156, 165 (1984); *Aetna Casualty & Surety Co. v. United States*, 228 Ct.Cl. 146, 151, 655 F.2d 1047 (1981).

Plaintiff asserts that jurisdiction rests with this court because his action (1) involves a Medicare Part B "entitlement" or "eligibility" dispute for which judicial review is authorized by statute (see Note 1, *supra*) and (2) raises a constitutional claim over which the court has traditionally exercised jurisdiction. Defendant argues that no jurisdiction lies in this court because plaintiff's action (1) seeks judicial review of a Medicare Part B "amount determination," proscribed by statute (Note 1, *supra*), and (2) raises no substantial constitutional claim.

The law is clear, and plaintiff does not disagree, that plaintiff would have no statutory right of judicial review if the decision rendered by the Medicare Hearing Officer is deemed to be simply an "amount determination." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 2140, 90 L.Ed.2d 623 (1986); *United States v. Erika, Inc.,* 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982).[2] Hence, plaintiff contends that his complaint actually "seeks a judicial review of his 'eligibility' or 'entitlement' to Medicare Part B reimbursement as recognized in *U.S. v. Sanet.*"[3] Neither *U.S. v. Sanet* nor the case at bar, however, involves an "eligibility" or "entitlement" dispute within the meaning of Medicare's judicial review clause, 42 U.S.C. § 1395ff. In *U.S. v. Sanet* the 11th Circuit stated unambiguously that "This is an action by the government seeking reimbursement of an overpayment[4].... [a] *dispute about amount*

[that] would be reconciled by administrative hearing [without judicial review]." (Emphasis added.) *U.S. v. Sanet*, 666 F.2d at 1375. Only the constitutional claims raised by the appellant offered an avenue of judicial review in the Court of Claims. The case at bar also originated in district court as an action by the government seeking reimbursement of a Medicare Part B overpayment which had been determined in an administrative hearing. The instant action, like *U.S. v. Sanet*, involves a "dispute about amount," not "eligibility" or "entitlement," and was transferred here by the district court only because of the constitutional claim(s) asserted by Dr. Romaguera. Accordingly, plaintiff has no statutory right to judicial review of his "fair hearing" determination.

\*     \*     \*     \*     \*     \*

■ Plaintiff's first constitutional claim is that the MHO's decision violated his due process rights "in that the Officer was an employee of Blue Cross and Blue Shield which had already found against Plaintiff and the said Hearing Officer was prejudiced and biased against the Plaintiff in favor of the Carrier and Doctors Hospital."[5] The Supreme Court was presented with the identical argument by Medicare Part B claimants in *Schweiker v. McClure et al.*, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). In holding that the hearing procedures were not, in and of themselves, violative of due process requirements, the court stated as follows:

"We must start ... from the presumption that the hearing officers who decide Part B claims are unbiased.[6] [Citations omitted.] This presumption can be rebutted by a showing of conflict of inter-

---

**2.** In *Erika,* the Supreme Court specifically reversed a Court of Claims ruling that it had jurisdiction over an action brought by a provider to contest a decision by the carrier respecting the amount of benefits payable under Medicare Part B.

**3.** Plaintiff's Response to Defendant's Motion to Dismiss and Defendant's Motion for Summary Judgment, p. 4.

**4.** "Overpayment" is defined in Section 7100 of the Medicare Part "B" Intermediary Manual, in pertinent part, as follows:

"... the term 'Overpayment' refers to an incorrect payment made under Title XVIII.... Overpayments may arise in various ways, such as ... [d]uplicate processing of charges."

**5.** Plaintiff's Amended Complaint, p. 3.

**6.** The court noted that MHOs are salaried by the federal government, not the carriers, that all Part B claims are paid from federal funds, not by the carriers, and that MHOs were obligated to comply with the provisions of the Medicare Act and regulations issued thereunder.

est or some other specific reason for disqualification. [Citations omitted.] But the burden of establishing a disqualifying interest rests on the party making the assertion."

*Schweiker v. McClure,* 456 U.S. at 195–96, 102 S.Ct. at 1670. In the case at bar, plaintiff has offered no evidence of any bias or prejudice on the part of the Medicare Hearing Officer who heard and rendered the decision on his claim. Accordingly, this court rejects plaintiff's contention that the "fair hearing" procedure violated his due process rights.

■ Plaintiff presents another due process argument in his Second Amended Complaint to the effect that the MHO improperly applied Medicare regulations taking effect on October 1, 1983, to reimbursement claims submitted by Dr. Romaguera prior to that date. Plaintiff does not further identify these regulations or their content in his pleadings, however, and has furnished no evidence whatsoever in support of the argument. The court therefore rejects this constitutional claim as totally unsubstantiated.

■ Plaintiff's claim that the monies withheld by Blue Cross and Blue Shield, as the government's agent, have been taken in violation of the Fifth Amendment is equally unpersuasive. As Dr. Romaguera was advised by Blue Cross and Blue Shield in an attachment to its letter of January 31, 1984, Medicare guidelines require carriers, in the event of overpayment to a physician which is not reimbursed, to offset the physician's assigned Medicare Part B payments in an effort to recover the amount due. In particular, section 7100 of the Medicare Part "B" Intermediary Manual states that "once a Carrier determined an overpayment has been made, the amount so determined is a *debt owed to the United States Government* and the Carrier must attempt recovery." (Emphasis added.) Moreover, the United States may bring suit directly under 28 U.S.C. § 1345 (as it did against Dr. Romaguera in federal district court) to collect on the debt (recoup the overpayment). *Wilson Clinic & Hospital, Inc. v. Blue Cross of South Carolina,* 494 F.2d 50 (4th Cir.1974); *U.S. v. California Care Corp.,* 709 F.2d 1241 (9th Cir.1983). In this legal context, the withholding of Medicare Part B payments from plaintiff does not constitute a taking of private property without just compensation in violation of the Fifth Amendment. Rather, it represents a valid procedure by the government to recoup government funds improperly held by the plaintiff.

■ Plaintiff's final argument is that a total bar to judicial review of Medicare Part B administrative determinations is *ipso facto* unconstitutional, so that jurisdiction in the Claims Court, in lieu of any alternative forum, is proper. This argument, however, has been clearly refuted by the Supreme Court in the previously discussed cases of *Bowen v. Michigan Academy of Family Physicians, United States v. Erika,* and *Schweiker v. McClure, supra,* which held that a bar to the judicial review of Medicare Part B amount determinations which did not raise substantial constitutional or statutory challenges *is* constitutional.

\*      \*      \*      \*      \*      \*

For the reasons stated hereinabove, this court finds no merit in plaintiff's claims that defendant failed to comply with applicable statutory and constitutional provisions in its administrative disposition of his Medicare Part B reimbursement dispute. Accordingly there is no legal basis for the court to grant judicial review under the *Whitecliff* rationale, page 535, *supra.*

## CONCLUSION

The court concludes that it has no jurisdiction over this action, and directs the Clerk to dismiss the Complaint. No costs.

IT IS SO ORDERED.