V.N.A. OF GREATER TIFT COUNTY, INC., a Georgia non-profit corporation, Plaintiff-Appellant,

v.

Margaret M. HECKLER * and Blue Cross and Blue Shield of Georgia/Columbus, Inc., Defendants-Appellees.

No. 82–8407.

United States Court of Appeals, Eleventh Circuit.

Aug. 12, 1983.

Rehearing and Rehearing En Banc Denied Oct. 7, 1983.

* Pursuant to Rule 43, Fed.R.App.P., Richard S. Schweiker has been replaced as a defendant-appellee by Margaret M. Heckler who assumed office as Secretary of Health and Human Services on March 9, 1983.

Joe R. Whatley, Jr., Birmingham, Ala., for plaintiff-appellant.

Gregory J. Leonard, Asst. U.S. Atty., Macon, Ga., F. Richard Waitsman, Asst. Regional Atty., Dept. of Health & Human Services, Atlanta, Ga., for defendants-appellees.

Before GODBOLD, Chief Judge, FAY and SMITH **, Circuit Judges.

** Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

EDWARD S. SMITH, Circuit Judge:

This appeal presents the efforts of a provider of medical services under the Medicare Act to obtain an injunction to restrain collection action on an alleged overpayment pending final administrative review. This appeal originally included a second case, *Alabama Home Health Care v. Heckler,* which presented the same legal issue on appeal but which has been dismissed as moot.[1] The district court in the Alabama Home Health Care case granted the requested injunction,[2] but the district court in this case dismissed the complaint for lack of jurisdiction.[3] On appeal, we must decide whether the All Writs Act empowers a district court, notwithstanding the preclusion of jurisdiction provision in the Medicare Act, 42 U.S.C. § 405(h), to enjoin the Secretary's suspension of reimbursement payments to a Medicare provider, before the provider has exhausted the administrative remedies required by the act to precede judicial review. We hold that the district court has the power to issue an injunction in certain extraordinary circumstances but that those circumstances are not presented in this case.

## I.

### A.

Under the Medicare program the Secretary of Health and Human Services (Secretary) reimburses providers of health services for certain medical items and services supplied to persons enrolled in the program.[4] Medicare coverage includes items and services supplied on a visiting basis to an eligible person's home. 42 U.S.C. § 1395x(m). (1976 & Supp. IV 1980). V.N.A. of Greater Tift County, Inc.

(V.N.A.) provides these home health care services. It is a nonprofit corporation that derives virtually all of its income from reimbursement by the Medicare program. Possessing neither large cash reserves nor alternative sources of income, V.N.A. is largely dependent upon frequent reimbursement of all expenses in order to remain solvent.

Reimbursement of a provider by the Secretary is accomplished through a "fiscal intermediary," either a public or a private organization, which makes the initial determination of amount of reimbursement and handles the payments. 42 U.S.C. §§ 1395g, 1395h. V.N.A.'s intermediary was Blue Cross and Blue Shield of Georgia/Columbus, Inc. (Blue Cross).

To facilitate participation in the Medicare program by cash-poor providers like V.N.A., Congress has authorized a system of monthly interim payments by the intermediary. 42 U.S.C. § 1395g; 42 C.F.R. § 405.454 (1981). The interim payments are computed from interim rates which are established and adjusted quarterly and annually by the intermediary on the basis of quarterly and annual cost reports filed by the provider. 42 C.F.R. § 405.454. No reimbursement may be made unless the provider has supplied these reports and, on request, has provided all the information necessary to substantiate them. 42 U.S.C. § 1395g(a); 42 C.F.R. § 405.406. The provider, in other words, has the burden of substantiation. 42 C.F.R. § 405.453(a); *Gosman v. United States,* 573 F.2d 31, 36 n. 4, 215 Ct.Cl. 617 (Ct.Cl.1978).

Upon receipt of the cost report, the intermediary analyzes the report, audits it if necessary, and issues its determination of the proper amount that the provider should

---

**1.** *Alabama Home Health Care, Inc. v. Heckler,* 711 F.2d 988 (11th Cir.1983). Although *Alabama Home Health Care* has been dismissed as moot, we will allude occasionally to it *to illustrate points pertinent to the present case.*

**2.** *Alabama Home Health Care, Inc. v. Schweiker,* 527 F.Supp. 849 (N.D.Ala.1981).

**3.** *V.N.A. of Greater Tift County, Inc. v. Schweiker,* Civ. No. 82–106–COL (M.D.Ga. June 28, 1982).

**4.** The Medicare program was created by the Medicare Act, 42 U.S.C. §§ 1395–1395vv (1976 & Supp. IV 1980), as a medical and hospital insurance program for persons otherwise eligible for the benefits provided by the Social Security Act, 42 U.S.C. §§ 301–1397f. All section references will be to the U.S.Code.

have been reimbursed during the period covered by the report. 42 C.F.R. § 405.-1803(a). A provider who is dissatisfied with the intermediary's determination, and whose claim exceeds $10,000, has the right to review by the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395*oo*; 42 C.F.R. § 405.1835. The PRRB is the final administrative remedy available to a provider (unless the Secretary on his own motion reviews the PRRB) and judicial review is based on its determination. 42 U.S.C. § 1395*oo*(f).

The intermediary's determination that an overpayment has occurred provides the basis for immediate suspension of all or part of further payments to the provider. 42 C.F.R. § 405.1803(b). This suspension must be imposed by the intermediary and the suspension must continue until the overpayment is liquidated or an agreement is reached, notwithstanding any administrative appeal taken by the provider. 42 C.F.R. §§ 405.1803(b), 405.373(a). The PRRB has no power to stay the suspension while the case is pending before it; it can only end the suspension by overturning the intermediary's determination on the merits. 42 C.F.R. §§ 405.1869, 405.373(a)(3); *see generally* 42 C.F.R. §§ 405.1835–405.1875.

### B.

Among the rules that the intermediary must apply in making its determination of amount of reimbursement is the related party principle. 42 C.F.R. § 405.427. Where a provider obtains services, facilities, or supplies from a related organization, it will be reimbursed only for the cost to that supplier or for the market price, whichever is lower. 42 C.F.R. § 405.427(c)(2). Two organizations are related when they are "to a significant extent * * * associated or affiliated," when one owns or controls the other, or when they have common ownership or control. 42 C.F.R. § 405.427(b).

A provider may obtain an exception to this rule if it "demonstrates by convincing evidence to the satisfaction of the fiscal intermediary" that the supplier is "a bona fide separate organization," that the supplier has a significant amount of business with unrelated organizations and operates in a competitive market, that the supplies are of a type normally obtained by a provider from a separate supplier, *and* that the supplier's prices are "in line with" the prices on the open market. 42 C.F.R. § 405.427(d).

In this case, the intermediary, Blue Cross, determined that a Medicare overpayment had occurred, $19,026 of which constituted overcharging by V.N.A.'s management firm, Health Care International, Inc. (HCI). Blue Cross found that HCI and V.N.A. were related because HCI had "effective control" over V.N.A.; accordingly, Blue Cross discounted the payments by V.N.A. to HCI. In its statement of reasons for its findings, Blue Cross noted that HCI had started up and capitalized V.N.A. and had recruited V.N.A.'s board of directors. The board had little involvement in the running of V.N.A.; HCI had almost entire administrative and financial control. The head administrator of V.N.A. was an HCI employee. HCI set all policies and provided professional training and guidance; it had sole control over all personnel—policies and individual actions—and custody of V.N.A.'s financial and statistical records. HCI had the authority to enter into contracts for V.N.A. and could enter transactions for up to $2,500 without board approval. This authority was exercised on some occasions to enter supply contracts with companies owned or partly owned by HCI.

V.N.A. does not contest these points but rather stresses that V.N.A. and HCI were formally separate organizations. V.N.A. has no stock, so there is no common ownership; there are no common directors, officers, or employees; and no one from HCI is on the V.N.A. Board of Advisors. V.N.A. demonstrates the independence of its board of directors by pointing out that it terminated its management contract with HCI. V.N.A.'s ultimate claim—that HCI's charges were not unacceptably high—is somewhat undercut, however, by its statement in terminating HCI that HCI's charges were "far out of line."

V.N.A. argued in its timely appeal to the PRRB that the Blue Cross determination of relatedness was erroneous.

## II.

At the same time that it filed for review by the PRRB, V.N.A. filed suit in district court to enjoin the suspension of payments pending a PRRB decision. V.N.A. claimed that, as virtually all of its patients are in the Medicare program, the incorrect suspension of full payments will cause it irreparable harm. The Secretary objected that the district court was without jurisdiction to review the intermediary's decision before a PRRB decision had been rendered.

■ Judicial review of reimbursement determinations is limited by the Medicare Act. Not only does the act require that a provider exhaust its administrative remedies before suing, but it *removes jurisdiction* from the courts to review a reimbursement decision before a PRRB decision has been rendered. The Medicare Act, 42 U.S.C. § 1395ii, incorporates the preclusion provision in the Social Security Act, which reads in pertinent part:

No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 [general federal question] or 1346 [United States as defendant] of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (1976).[5] This limits a provider to review through the procedure provided by the Medicare Act:

A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. * * * Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of title 5 [the Administrative Procedure Act] * * *.

42 U.S.C. § 1395oo(f)(1) (Supp. IV 1980).

■ In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court held that the limitation of jurisdiction is to be strictly applied.[6] The preclusion provision is not merely "a codification of the doctrine of exhaustion of administrative remedies," which a court could waive if exhaustion appeared futile, but "prevent[s] review of decisions of the Secretary save as provided in the Act, which provision is

---

5. There can be no question that § 405(h) fully applies to the present case, because the district court's jurisdiction is founded on 28 U.S.C. § 1331. The All Writs Act may be the basis for authority to issue an injunction, but it is not a basis of jurisdiction. "It is settled that * * * the All Writs Act, by itself, creates no jurisdiction in the district courts. It empowers them only to issue writs in aid of jurisdiction * * * acquired on some other independent ground." *Brittingham v. Commissioner,* 451 F.2d 315, 317 (5th Cir.1971); *see also Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1,* 665 F.2d 594, 595 (5th Cir.1982).

6. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), interpreted the Social Security Act. The Medicare Act incorporates the Social Security Act preclusion provision, 42 U.S.C. § 405(h), which "shall * * * apply with respect to [the Medicare Act] to the same extent as [it is] applicable with respect to [the Social Security Act]." 42 U.S.C. § 1395ii. Therefore, *Salfi* and *Eldridge* are controlling. *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 331 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978).

made in [§ 1395oo(f)]." [7] *Salfi,* 422 U.S. at 757, 95 S.Ct. at 2463. *Mathews v. Eldridge* explained that under *Salfi* a provider is faced with (1) an unwaivable (because jurisdictional) requirement that the provider present a claim to the Secretary (*i.e.,* to the PRRB) for a decision and (2) a waivable requirement of the *full* proceeding set out by statute and regulation.[8] *Eldridge,* 424 U.S. at 328–32, 96 S.Ct. at 899–901. In other words, the Secretary may well decide that full administrative review is completely futile, but a claim must be presented to the Secretary for her to make this decision. A court may not substitute its judgment of futility because it has no jurisdiction until the Secretary has made some decision. *Salfi,* 422 U.S. at 766, 95 S.Ct. at 2467.

 Since *Salfi* and *Eldridge,* the scope of the preclusion provision has engendered much litigation and little consensus. It is agreed by all of the circuits that the central target of the section 405(h) preclusion is "any action envisioning recovery on any claim emanating from" the Medicare Act. *Association of American Medical Colleges v.*

*Califano,* 569 F.2d 101, 107 (D.C.Cir.1977). Regardless of its setting, any suit "seeking eventual realization of provider-cost reimbursement under the Medicare Act" is "intercept[ed]" by section 405(h). *Id.* From this point on, however, consensus ceases. To summarize: some circuits have held that section 405(h) does not preclude challenges brought under the Administrative Procedure Act—not because the APA provides an independent source of jurisdiction,[9] but because a claim "brought simply to vindicate an interest in procedural regularity" is not an action "*to recover* on any claim." *Humana of South Carolina, Inc. v. Califano,* 590 F.2d 1070, 1080 (D.C.Cir.1978) (emphasis supplied).[10] Three circuits have held that a claim that is not cognizable by the PRRB under section 1395oo is not precluded, because there is a strong presumption, not rebutted by the statute, that Congress would not cut off *all* relief.[11]

Other circuits have held that total preclusion of review except after a PRRB decision is ˙precisely˙ what was intended.[12] These

7. *Salfi* discussed the Social Security judicial review provision, § 405(g). The Medicare Act provision, § 1395oo(f), is the "functional equivalent of § 405(g) in this context, expressly authorizing judicial review of final decisions of the [PRRB] and of any reversal, affirmance or modification of any Board decision by the Secretary." *Rhode Island Hosp. v. Califano,* 585 F.2d 1153, 1158 (1st Cir.1978).

8. For example, *Salfi* involved a constitutional challenge to Social Security regulations. While it might ordinarily have been clear that exhaustion would be futile—the Secretary would be unlikely to declare his own regulations unconstitutional—it was not for the court to determine futility. Having found that Salfi had already presented her claim to the Secretary, the Court held that the *Secretary* had waived full administrative proceedings as to those claims which had been presented to him, permitting judicial review.

9. *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), held that it does not.

10. The *Humana* plaintiffs challenged the Secretary's position that certain regulations were exempt from the notice and comment provisions of the APA. *See also Mathews,* 424 U.S. at 329–32, 96 S.Ct. at 900–01 (collateral procedural due process claim can be raised without

exhausting all administrative remedies); *Daniel Freeman Memorial Hosp. v. Schweiker,* 656 F.2d 473, 476 (9th Cir.1981) (violation of APA rulemaking procedures); *St. Louis Univ. v. Blue Cross Hosp. Serv.,* 537 F.2d 283, 292 (8th Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976) (no bar to procedural due process claim that "will not necessarily affect the University's entitlement to reimbursement or the amount allowed").

11. *See National Ass'n of Home Health Agencies v. Schweiker,* 690 F.2d 932, 940–41 (D.C. Cir.1982) (regulation requiring providers to use certain fiscal intermediaries); *Chelsea Community Hosp. v. Michigan Blue Cross Ass'n,* 630 F.2d 1131, 1134–35 (6th Cir.1980) (review of intermediary determination of relatedness for years prior to creation of PRRB); *United States v. Aquavella,* 615 F.2d 12, 20–21 (2d Cir.1980) (suit by United States against provider); *Whitecliff, Inc. v. United States,* 536 F.2d 347, 350–51, 210 Ct.Cl. 53, (Ct.Cl.1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977) (*Salfi* does not apply to Medicare where, prior to enactment of § 1395oo, no review available at all).

12. *Hadley Memorial Hosp., Inc. v. Schweiker,* 689 F.2d 905, 910–12 (10th Cir.1982); *Rhode Island Hosp.,* 585 F.2d at 1160–61 (1st Cir.) (delay in administrative process does not justi-

courts have not been persuaded either that "to recover" limits the scope of preclusion or that Congress has not clearly stated an intent to preclude all review.[13] Rather, they have relied on the plain language of the provision to conclude:

> Even though the District Court may perceive equities in favor of hearing claims immediately, perhaps even the appearance of futility in forcing a party to pursue the statutory procedure, *the District Court is utterly without power* to entertain those claims. [Emphasis supplied.]

*Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123, 138 (9th Cir.1980).[14]

This circuit is squarely in the latter camp. In *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 331–32 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978)—a challenge to a regulation, and the Secretary's interpretation of it, governing method for determining cost—the court held that the rationale of *Salfi* "precludes all review of the Secretary's decisions by federal district courts brought under § 1331."[15] In *American Association of Councils of Medical Staffs of Private Hospitals, Inc. v. Califano,* 575 F.2d 1367 (5th Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72

(1979), the court further held that, with respect to a purely procedural claim (regulations governing evaluation of medical staffs) which would have no effect upon any reimbursement, the absence of an effect on reimbursement was "unimportant." "[Section] 405(h) extended to any *action to recover on any claim." Id.,* 575 F.2d at 1372 (emphasis in original).[16] This strict position was maintained in *Bussey v. Harris,* 611 F.2d 1001 (5th Cir.1980), in the face of a constitutional and statutory challenge to regulations denying reimbursement for services of a licensed physician's assistant. In short, the Fifth Circuit has consistently adhered to the position that no claims may be heard by the district court in any posture because section 405(h) has removed *all* jurisdiction from the district courts.[17]

The Eleventh Circuit, of course, is bound by *MacDonald, et al. Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc). In *United States v. Sanet,* 666 F.2d 1370 (11th Cir.1982), an overpayment was determined but the provider refused to appeal to the PRRB and then withdrew from the program, so the Government was forced to sue the provider for return of overpayments. The provider argued that, since the suit was brought

---

fy disregard of *Salfi*); *Trinity Memorial Hosp. of Cudahy, Inc. v. Associated Hosp. Serv., Inc.,* 570 F.2d 660, 666–67 (7th Cir.1977) (but Court of Claims has jurisdiction of constitutional claims); *St. Louis Univ.,* 537 F.2d at 288–89, 291–93 (as to statutory claims only; constitutional procedural claims not barred).

13. The courts have, however, found some method of review of constitutional claims. Usually, this involves resort to the Court of Claims—now to the U.S. Claims Court—pursuant to 28 U.S.C. § 1491, which is not mentioned in § 405(h). *See Trinity Memorial Hosp.,* 570 F.2d at 667 (7th Cir.); *MacDonald,* 571 F.2d at 331–32 (5th Cir.); *Whitecliff,* 536 F.2d at 351 (Ct.Cl.). The rationale is usually that the result in *Salfi* was much influenced by the presence of a judicial review provision, § 405(g), in the Social Security Act, but that (until 1973) such review was not available under the Medicare Act.

14. The Ninth Circuit in *Freeman* subsequently allowed jurisdiction in purely procedural cases. *See supra* note 10.

15. *MacDonald* did not address § 1395oo(f) procedures and of course they supersede *total* preclusion.

16. This reading contrasts with the emphasis on "to recover" in *Humana. See supra* text preceding note 10.

17. The Fifth Circuit has avoided the constitutional due process difficulties which attend the total withdrawal of judicial review by finding that such suits can always be brought in the Court of Claims (now in the Claims Court) as a refund suit under 28 U.S.C. § 1491, as § 1491 is not mentioned by § 405(h). *MacDonald,* 571 F.2d at 332; *American Ass'n of Councils of Medical Staffs of Private Hosps., Inc. v. Califano,* 575 F.2d 1367, 1373 (5th Cir.1978) (concluding that surely ingenious lawyers could find a money claim on which to base a § 1491 suit in the Court of Claims); *Bussey v. Harris,* 611 F.2d 1001, 1005 (5th Cir.1980).

under 28 U.S.C. § 1345 (suits by the United States), which is not mentioned in section 405(h), the district court had to consider his substantive defense to the initial administrative determination.[18] We reasoned that to permit the district court to decide the merits of this claim would grant a right of review to those who drop out of the program that is unavailable to those who stay in it. *Id.,* 666 F.2d at 1375.

The claims of V.N.A. are at the heart of the section 405(h) preclusion, as it readily concedes. V.N.A. seeks redress on the basis of interpretation of regulations (it does not challenge the validity of the regulations) and it directly seeks "realization of provider-cost reimbursement under the Medicare Act." *American Medical Colleges,* 569 F.2d at 107. Furthermore, the claims are within the PRRB's jurisdiction—V.N.A. has appealed to the PRRB—and the PRRB has not yet rendered a final decision. Nor is there any reason to believe that the Secretary has waived any administrative procedures. Considered alone, therefore, section 405(h) would entirely preclude the district court from exercising jurisdiction over this case.

### III.

V.N.A. argues, however, that it is not requesting review of a decision within the meaning of section 405(h). Rather, it simply wants to preserve the status quo (*i.e.,* its solvency and ability to operate) *pending* the PRRB decision, at which time the district court would unquestionably have jurisdiction of the case.[19] The provider asserts that the district court has jurisdiction to issue an injunction under the All Writs Act, notwithstanding section 405(h).

▮ The All Writs Act, a feature of the judiciary since 1789,[20] provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a) (1976). It is firmly established that the act encompasses the traditional power of the courts to enter a stay of enforcement of an agency decision already entered, pending review in the court issuing the injunction, "to prevent irreparable injury * * * resulting from the premature enforcement" of an agency decision. *Scripps-Howard Radio, Inc. v. Federal Communications Commission,* 316 U.S. 4, 9, 62 S.Ct. 875, 879, 86 L.Ed. 1229 (1942). In *Roche v. Evaporated Milk Association,* 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), the Supreme Court held further that this "authority is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected." While this power must not be used to circumvent agency decision-making, there is "a limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the prescribed statutory channels." *Arrow Transportation Co. v. Southern Railway Co.,* 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 991 n. 22, 10 L.Ed.2d 52 (1963).

▮ Against this background, the Court in 1966 decided *Federal Trade Commission v. Dean Foods Co.,* 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). The FTC in that case was seeking to maintain the status quo by enjoining a merger which it believed, but had not yet administratively determined, was anticompetitive. The Court, relying on *Scripps-Howard, Roche,* and *Arrow,* held that the power to enter a status quo injunction "extends to the *poten-*

---

**18.** Sanet claimed that the sampling methods used by the Secretary to determine what services are necessary and reasonable violated his constitutional due process rights.

**19.** The rendering of a PRRB decision affirming the intermediary's determination of relatedness is what mooted the Alabama Home Health Care appeal. *See supra* note 1.

**20.** The first Judiciary Act, 1 Stat. 73, 81–82 (1789), contained language almost identical to the present provision.

*tial* jurisdiction of the appellate court where an appeal is not then pending but *may* be later perfected." *Dean Foods,* 384 U.S. at 603, 86 S.Ct. at 1742 (emphasis supplied).[21] The statutory grant of power to review FTC orders "includes the traditional power to issue injunctions to preserve the *status quo* while administrative proceedings are in progress and prevent impairment of the effective exercise of appellate jurisdiction." *Id.,* 384 U.S. at 604, 86 S.Ct. at 1743.

The FTC had argued that, if the proposed merger took place, the resultant sharing and division of assets between the companies would render impossible the fashioning of an administrative order separating the two companies.

> [T]he Court of Appeals "will, in effect, be deprived of its appellate jurisdiction [over final Commission orders] and of the opportunity to enter a meaningful final order of its own in respect to this acquisition, since the *res in custodia legis*—Bowman [the acquired company]—will have vanished."

*Dean Foods,* 384 U.S. at 600, 86 S.Ct. at 1740. The Court accepted this contention as true, 384 U.S. at 601, 86 S.Ct. at 1741, and relied heavily on these compelling facts. Accordingly, the Fifth Circuit has said:

> A federal court has the power under the All Writs Act to issue injunctive orders [to preserve the status quo] in a case even before the court's jurisdiction has been established. When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it. *See, e.g., FTC v. Dean Foods Co.* * * *.

*ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1359 n. 19 (5th Cir. 1978).[22]

The direct application of *Dean Foods* to the present case might well be expressed by use, verbatim, of an earlier statement by Justice Douglas:

> The power to issue a stay is inherent in judicial power and as indicated by the Court rests on the exercise of an informed discretion on a showing of irreparable injury to the applicant or to the public interest, *Scripps-Howard Radio v. FCC,* 316 U.S. 4, 14 [62 S.Ct. 875, 882, 86 L.Ed. 1229]. That doctrine is not limited, as the Department of Justice suggests, to issuance of stays by a court only after an appeal has been taken. We held in *FTC v. Dean Foods Co.,* 384 U.S. 597, 603–604 [86 S.Ct. 1738, 1742–43, 16 L.Ed.2d 802], that the All Writs Act, 28 U.S.C. § 1651, which empowers federal courts to " 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,' " extends to "potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected." The District Court has at least a limited review of the [Secretary] * * *. Hence the All Writs Act justified its power to grant a stay.
>
> We have, therefore, a case where a stay supplements and does not curtail administrative power, the [Secretary] having no authority to grant that relief. The District Court power preserves the status quo, does not pass on the merits of the controversy, and limits its stay to the date when the merits of the discharge are adjudicated by the [Secretary]. * * *

§ 1651(a) (emphasis supplied). *See also United States v. New York Tel. Co.,* 434 U.S. 159, 173, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977); *Chandler v. Judicial Council,* 398 U.S. 74, 112–13, 90 S.Ct. 1648, 1667–68, 26 L.Ed.2d 100 (1970) (Harlan, J., concurring in denial of writ). "The All Writs Act * * * provided statutory confirmation of this authority." *Sampson v. Murray,* 415 U.S. 61, 73–74, 94 S.Ct. 937, 945, 39 L.Ed.2d 166 (1974).

---

**21.** In general, the cited cases involved situations in which a court of appeals was reviewing agency action, the standard pattern for judicial review of agency action. Since under the Medicare Act the district courts have the appellate functions, *Dean Foods* and the other cases apply to them.

**22.** This rationale is consistent with the All Writs Act provision for "all writs * * * *in aid of* their respective jurisdictions." 28 U.S.C.

*Sampson v. Murray,* 415 U.S. 61, 93–94, 94 S.Ct. 937, 954, 39 L.Ed.2d 166 (1974) (Douglas, J., dissenting). Considered alone, therefore, the All Writs Act, under *Dean Foods,* would permit the district court to exercise jurisdiction over this case.

## IV.

### A.

The two lines of analysis described above—one (Part II) based on section 405(h), the other (Part III) on the All Writs Act and *Dean Foods*—parallel the arguments in this case of the district court and the Government and of V.N.A., respectively. Considering them, one has less a sense of conflicting theories than of ships passing in the night. The Medicare Act preclusion line of argument and the *Dean Foods* line of argument do not really respond to each other, and neither refers to a common higher authority which could explain how they are related.

In *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Supreme Court was faced with a similar conflict between the expansive *Dean Foods* doctrine and the "established principles [which refuse] equitable intervention in disputes over tenure of governmental employees" (415 U.S. at 71, 94 S.Ct. at 944).[23] *Murray* did not adopt the direct *Dean Foods* approach—the sharp-eyed reader will have noted that Justice Douglas' comments above were in dissent—and attempted to find the common ground between the preclusion and *Dean Foods* lines of analysis.

■ The Court in *Murray* agreed with *Dean Foods* to the extent that *Murray* held that the district courts are "not totally without authority to grant interim injunctive relief" in a status quo action, 415 U.S. at 63, 94 S.Ct. at 940, but then said:

> While it would doubtless be intellectually neater to completely separate the question whether a District Court has authority to issue any temporary injunctive relief * * * from the question whether the relief granted in this case

was proper, we do not believe the questions may be thus bifurcated into two watertight compartments. * * *

415 U.S. at 68, 94 S.Ct. at 942. Accordingly, a district court is

> quite wrong in routinely applying to this case the traditional standards governing more orthodox "stays." [Citation and footnote omitted.] Although we do not hold that Congress has wholly foreclosed the granting of preliminary injunctive relief in such cases, we do believe that respondent *at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in [such] cases.* [Emphasis supplied.]

*Murray,* 415 U.S. at 83–84, 94 S.Ct. at 950. In other words, the proper analysis adjusts the standard requirements for the requested preliminary injunction in light of (1) whether refusal to grant the injunction will defeat the court's review jurisdiction and (2) whether Congress intended to permit or to preclude a status quo injunction.

In considering the harm to the court's jurisdiction, *Murray* was at some pains to emphasize the extreme facts in *Dean Foods.* In *Dean Foods,* the disappearance of the acquired company would have "effectively defeated" the court's ability to exercise its jurisdiction. *Murray,* 415 U.S. at 77–78 & nn. 34, 36, 94 S.Ct. at 946–47 & nn. 34, 36. In *Murray* by contrast—where a probationary Government employee was seeking an injunction against dismissal pending final administrative review—the court's review was not endangered because Mrs. Murray would not cease to exist. The Court therefore found that the dismissal of a Government employee (except in rare cases, *see* 415 U.S. at 92 n. 68, 94 S.Ct. at 953 n. 68) does not give rise to the same injury to jurisdiction as threatened in *Dean Foods.*

To determine congressional intent, the Court looked at both the statutes governing the Civil Service and the cases interpreting them. It concluded that the statutory

**23.** *See White v. Berry,* 171 U.S. 366, 18 S.Ct. 917, 43 L.Ed. 199 (1898).

framework intended that probationary employees have relatively few substantive rights, so that interim reinstatement by the court would in effect give the employee new, unauthorized rights. Furthermore, a sufficient remedy was provided which did not include status quo injunctions. *Murray,* 415 U.S. at 81–83, 94 S.Ct. at 948–49. The Court pointed out, based on case law, that the courts had traditionally given the Government extremely wide latitude in personnel matters and that a status quo injunction would be seriously disruptive of the authorized administrative process. 415 U.S. at 83, 94 S.Ct. at 949. In essence, Congress intended that judicial involvement in the administrative process would be precluded, except in rare cases, until a final administrative decision had been rendered.

Concluding that considerations of harm to jurisdiction and congressional intent "cut against" the availability of a status quo injunction, the Court held that Murray would have to make an unusually strong showing on the factors determining issuance of a preliminary injunction.[24] 415 U.S. at 80, 83–84, 94 S.Ct. at 948, 949–50. The Court found Murray's claim of irreparable injury unconvincing. It held that the simple loss of a job is loss of income and that mere loss of income does not establish irreparable injury even under the normal standards for granting a preliminary injunction.

We read *Murray* to require that *all* of the standards for a preliminary injunction—probability of success on the merits, harm to other parties, the public interest, *and* irreparable injury—are subject to the heightened standards. The author of the *Murray* opinion said as much in a later decision, in which he cited *Murray* for the proposition that several factors—he mentioned particularly irreparable injury and likelihood of success on the merits—are to be considered. *Coleman v. Paccar, Inc.,* 424 U.S. 1301, 1305, 96 S.Ct. 845, 847–48, 47 L.Ed.2d 67 (1976) (Rehnquist, Circuit Justice). *Murray* dwelt on irreparable injury, we believe, because that was the essential weakness in Murray's case.

*Murray,* therefore, does not so much mandate new considerations as a new way of analyzing them.[25] *Dean Foods* and its predecessors had divided their analyses between the traditional power to issue the status quo injunction and the congressional preclusion, and the appropriateness of the exercise of the power in the particular case. *See, e.g., Dean Foods,* 384 U.S. at 612, 86 S.Ct. at 1746; *Roche,* 319 U.S. at 25–26, 63 S.Ct. at 941; *Scripps-Howard,* 316 U.S. at 9–10, 62 S.Ct. at 879–80. The earlier cases, however, more sharply separated the jurisdictional question (the "traditional power") from the congressional intent, and both from the preliminary injunction standards. The sharp division is easier to manage ("intellectually neater," in *Murray's* words), perhaps because it accords better with one's general notion that jurisdiction is a yes or no proposition in a given kind of case, but it is of little help where the traditional power collides with an apparent statutory preclusion.

### B.

We must now determine whether the heightened standards used in *Murray* must be applied in this case. This involves two inquiries: whether the reviewing court's eventual jurisdiction will be defeated, and whether a status quo injunction would be contrary to the statutory scheme.

---

24. The Court cited *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C.Cir.1958), for these standards, as the court below had relied on it. *See Murray v. Kunzig,* 462 F.2d 871, 877–78 (D.C.Cir.1972), *rev'd,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166. Corresponding precedents for this circuit are *Canal Auth. v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974), and *West Point-Pepperell, Inc. v. Donovan,* 689 F.2d 950, 956 (11th Cir.1982).

25. *Murray* neither overruled *Dean Foods* nor specifically limited *Dean Foods* to its facts, *see generally Murray,* 415 U.S. at 76–78, 94 S.Ct. at 946–47, but the conclusion is inescapable that *Murray* replaces the *Dean Foods* analysis. While the foregoing discussion should amply support this proposition, it is worth repeating that Justice Douglas' *Dean Foods* analysis was in dissent in *Murray.*

■ The provider's essential argument with relation to harm to jurisdiction is that if it is forced out of business, review will be pointless because it will not exist as a provider. We cannot accept blindly, however, the proposition that irreparable injury to the provider is irreparable injury to the court's jurisdiction. The pre-*Murray* cases suggest that significant impairment of the exercise of jurisdiction is the applicable standard. *See Dean Foods,* 384 U.S. at 604, 86 S.Ct. at 1743 ("impairment"); *ITT Community Development Corp.,* 569 F.2d at 1359 ("impede," "detrimental," "diminish"). However, *Murray* used the term "defeat" to describe the required effect on the court's jurisdiction, and it emphasized the exceptional facts of *Dean Foods* in which jurisdiction would have been utterly defeated. *Murray,* 415 U.S. at 77–78, 94 S.Ct. at 946–47. Although a corporation could very well disappear as a provider of medical services,[26] at the very least an estate in bankruptcy would remain to collect the money owing it, if any. The jurisdiction of the district court could be significantly impaired by the bankruptcy of the provider though not necessarily defeated. *Dean Foods* may be satisfied, but *Murray* may not.

Be that as it may—we recognize that the distinction between "impair" and "defeat" is a fine one—we must concurrently examine whether the granting of a status quo injunction pending an administrative determination of relatedness would be contrary to the intent of Congress in the Medicare Act.

It cannot be gainsaid that the present dispute is at the core of the act's preclusion. The provider directly seeks higher reimbursement, which *MacDonald* held is most emphatically precluded—the area is where

the district court is "utterly without power." *Pacific Coast,* 633 F.2d at 138. In addition, the dispute hinges on the application of regulations (conceded to be valid) to particular, complicated facts. This is precisely the situation in which PRRB review will not only be most helpful and appropriate, but also where it holds the greatest potential for eliminating the need for eventual resort to the courts.[27]

This is also the area for which Congress clearly provided a remedy which places PRRB review first. The relief in the courts at a later time was intended by Congress to be a full and complete remedy. In the words of *Murray,* the provider is "in effect asking [the] court to grant * * *, on an interim basis, relief which the administrative agency charged with review * * * could grant * * * only after it had made a determination on the merits." 415 U.S. at 74, 94 S.Ct. at 945. It is significant that Congress has specifically provided for a remedy in the district court where the PRRB cannot decide the question because it has no jurisdiction. 42 U.S.C. § 1395oo (f)(1) (added by Pub.L. No. 96–499, § 955, 94 Stat. 2647 (1980)). The addition of this provision[28] demonstrates congressional concern for timely disposition of claims. But Congress provided expedited review *only* for the PRRB jurisdiction problem. Reasoning from silence can be dangerous, but the conclusion seems inescapable that Congress intended to limit judicial review to specific situations.

Against these considerations is V.N.A.'s basic contention that it is not asking for review on the merits but merely a stay to maintain the status quo. It is true that the cases speak of preclusion of review of PRRB *decisions,* and the main purpose of

---

**26.** V.N.A. alleges that it will go bankrupt. The district court did not reach the issue. As to the jurisdictional inquiry we accept as true the provider's allegations. *Dean Foods,* 384 U.S. at 601, 86 S.Ct. at 1741.

**27.** It will be recalled that *Salfi* held that jurisdiction was barred even where the Secretary would be certain not to grant relief, *e.g.,* a claim that the Secretary's regulations were unconstitutional. 422 U.S. at 762, 95 S.Ct. at

2465; *see supra* note 8. Here a negative determination is by no means certain.

**28.** The addition was a response to the *Salfi* problem of having to exhaust a futile remedy. *See* H.R.Rep. No. 1167, 96th Cong., 2d Sess. 394 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 5526, 5757 (report on Omnibus Reconciliation Act of 1980).

preclusion is to avoid anticipation by the court of an agency determination on the merits. However, the third sentence of section 405(h) precludes any *"action"*; it does not limit its scope to judicial review on the merits. *Medical Staffs,* 575 F.2d at 1372.[29] As the third sentence is the teeth of the preclusion provision (*Salfi,* 422 U.S. at 757, 95 S.Ct. at 2462), this is a fatal defect in the provider's theory.

V.N.A. also points out that the regulatory prohibition on PRRB stays is not mandated by the Medicare Act. The act gives the PRRB "full power and authority to make rules and establish procedures, not inconsistent with the provisions of this subchapter or regulations of the Secretary." 42 U.S.C. § 1395*oo* (e). The prohibition, it argues, is therefore not part of the statutory scheme that includes preclusion.

While the regulatory arrangement certainly sows the seeds of potential injury to a provider, that potential is not *contrary* to the statutory structure. *Eldridge* suggests strongly that there is room for a wholly collateral procedural attack, for example, to compel agency action wrongfully withheld. *Eldridge,* 424 U.S. at 330–31, 96 S.Ct. at 900–01. In other words, to the extent that a provider could show that a delay during PRRB review is contrary to the statute, it might well have a cause of action.[30] Furthermore, our holding that there is fundamental jurisdiction in the case of truly wrongful agency action also mitigates any extremely ill effects of preclusion.

Finally, *Murray* held that where interim relief would usurp or expand the agency's jurisdiction it impermissibly disrupts the agency. *Murray,* 415 U.S. at 71–72, 94 S.Ct. at 943–44. The relief requested here— purely staying affirmative agency action to collect—would appear to present no such obstacle. However, we must question, as the Secretary does, the practical reality of the idea that the district court does not consider the merits in a close case like this. In order to establish substantial likelihood of success on the merits it will become necessary, as it did in *Alabama Home Health Care,* for both parties to engage in extensive discovery and to present their whole cases on the merits.[31] The district court will in effect decide the merits of the case before the board does [32]—and then conduct a limited review of the board's decision as mandated in the statute.

The preclusion provision in the Medicare Act works in both directions: it avoids unnecessary and/or uninformed court decisions, and it protects the integrity of the administrative process. The agency would be substantially undermined by issuance of a status quo injunction. Where both parties engage in extensive discovery and presentation of their whole cases on the merits, the district court does *exactly* what the PRRB is expected to do. It is simply not realistic to say that the district court in such a case does not address and decide the merits of the case. Such plenary consideration violates not only the procedural structure of the Medicare Act, but it is in effect a de novo decision on the merits in direct contravention of the limited review mandated by statute. 42 U.S.C. § 1395*oo* (f)(1) (APA standards, 5 U.S.C. § 706 (1976)). A district court's action in granting a status quo injunction after lengthy consideration of the merits must be deemed to be fundamentally at odds with the Medicare Act.

We therefore conclude that, even granting the strong possibility of harm to the reviewing court's eventual jurisdiction, the lengthy review of the merits required in a close case such as this is so at odds with the statutory framework that a conflict is created which requires, pursuant to *Murray,*

---

**29.** *See supra* note 16 and accompanying text.

**30.** It is not contended in this case that the PRRB has unlawfully delayed its decision.

**31.** The district court in *Alabama Home Health Care* considered 300 pages of testimony in addition to voluminous exhibits.

**32.** We do not mean to suggest that the kind of limited review of the merits necessitated by the requirement of substantial likelihood of success on the merits is in any way illegitimate. Rather, our criticism of in-depth consideration of the merits relates solely to this particular statutory scheme.

that higher standards for a preliminary injunction be applied in this case.

## V.

### A.

Our ultimate task is to apply the heightened standards to the case at bar. However, while *Murray* required a higher standard for granting preliminary injunctive relief, it did not articulate the new standard.

Some guidance can be obtained from cases decided under the Anti-Injunction Act, which provides that *"no suit* for the purpose of restraining the assessment or collection of any tax *shall be maintained in any court."* I.R.C. (26 U.S.C.) § 7421(a) (Supp. V 1981) (emphasis supplied). This language is very similar to the preclusion language of section 405(h), and it serves a similar purpose:

> to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. * * *

*Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962); *see also Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974). Despite the apparently absolute prohibition on such suits, the Supreme Court has held that there are exceptional cases in which jurisdiction can be exercised:

> Only upon proof of the presence of two factors could the literal terms of § 7421(a) be avoided: first, irreparable injury, the essential prerequisite for injunctive relief in any case; and second, *certainty* of success on the merits. [*William Packing*], [370 U.S.] at 6–7 [82 S.Ct. at 1128–29]. An injunction could issue only "if it is clear that under no circumstances could the Government ultimately

prevail...." *Id.,* at 7 [82 S.Ct. at 1129]. * * * [Emphasis supplied.]

*Bob Jones University,* 416 U.S. at 737, 94 S.Ct. at 2046; *Commissioner v. "Americans United" Inc.,* 416 U.S. 752, 758, 94 S.Ct. 2053, 2057, 40 L.Ed.2d 518 (1974).[33] In *Williams Packing* itself the Court had denied the injunction and its discussion of irreparable injury is particularly instructive.

Noting that collection of the tax "would destroy its business, ruin it financially and inflict loss for which it would have no remedy at law," the Court held that an injunction could properly issue. [Citation omitted.] The courts below seem to have found that * * * § 7421(a) does not bar suit for an injunction against the collection of taxes not due if the legal remedy is inadequate. We cannot agree.

* * * [I]f Congress had desired to make the availability of the injunctive remedy against the collection of federal taxes not lawfully due depend upon the adequacy of the legal remedy, it would have said so explicitly. Its failure to do so shows that such a suit may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise. This is not to say, of course, that inadequacy of the legal remedy need not be established if § 7421(a) is inapplicable; * * *. [Citations omitted.] However, since we conclude that § 7421(a) bars any suit for an injunction in this case [because the Government may well prevail], we need not determine whether the taxpayer would suffer irreparable injury if collection were effected.

*Williams Packing,* 370 U.S. at 6–7, 82 S.Ct. at 1128–29. These cases are not controlling here, but they do offer a concrete example of the *Murray* synthesis.

▪ The preclusion of review in section 405(h), and its purpose to ensure that the

---

**33.** The Court continued: " * * * And this determination would be made on the basis of the information available to the Government at the time of the suit. 'Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained.' * * * [*Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1961).]" *Bob Jones Univ. v. Simon,* 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974). We do not deem it necessary to impose so strict a rule here.

agency make the first determination, will best be effectuated by a standard of review which requires (1) a virtual certainty of irreparable injury, (2) a similar certainty of success on the merits, for example, outrageous or entirely unauthorized (*ultra vires,* so to speak) agency action, (3) minimal harm to the agency, in the sense of disruption of its processes, and (4) the public interest clearly favoring the assumption of jurisdiction. All of these requirements must be satisfied.

### B.

██ Finally, we apply each requirement to the undisputed facts in this case.

(1) V.N.A. makes a far stronger case for irreparable injury than was made in *Murray.* It specifically alleges - an irreparable harm—being forced out of business [34] —which is not remediable in the interim by the PRRB.

The significance of this injury under the Medicare Act is lessened, however, by three considerations. First, the Secretary may enter into an agreement to make suspension of payments as painless as possible. Such an agreement will stay total suspension pending PRRB review. 42 C.F.R. § 405.-373(a)(2). In this case, Blue Cross offered to negotiate such a plan, but V.N.A. did not respond, instead filing for a preliminary injunction. (A plan was entered into between Alabama Home Health Care and its intermediary.) Second, the problem of bankruptcy is endemic to a system which relies on non-profit, cash-poor providers which are wholly dependent on Medicare reimbursement. Were irreparable injury the only criteria for exercise of jurisdiction, the courts would be inundated by claims from other providers whenever they were

determined by the intermediary to have been overpaid. Third, providers do not lack notice of these review provisions. Having chosen to operate within the system [35] on a cash-poor basis, they take a knowing risk that an intermediary's determination might delay payment.[36] In sum, there is no reason to think that the straits in which this provider finds itself "so far depart from the normal situation" (*Murray,* 415 U.S. at 92 n. 68, 94 S.Ct. at 953 n. 68) as to justify fundamental deviation from the statutory scheme.

In view of these considerations, we cannot conclude that the provider, in the words of *Murray,* made "a showing of irreparable injury sufficient in kind and degree to override these factors [*i.e.,* the statutory preclusion] cutting against the general availability of preliminary injunctions" to providers (415 U.S. at 84, 94 S.Ct. at 950).

(2) We also find that V.N.A. cannot show a probability of success on the merits even approaching the certainty required in light of the statutory preclusion. It presented a plausible but by no means overwhelming case. The pervasive role of HCI in the creation and operation of V.N.A. offered an ample basis for the intermediary's initial determination of relatedness. Indeed, V.N.A. itself accused HCI of overcharging—precisely the problem which the related party principle was designed to cure. To show unrelatedness, V.N.A. cited other undisputed facts and argued their relative significance. The detailed inquiry and analysis that this will obviously entail does not constitute, in our view, certainty of success on the merits.[37]

From our review of the record, it is clear to us that if the intermediary was wrong in

---

**34.** *See Williams Packing,* 370 U.S. at 6, 82 S.Ct. at 1128.

**35.** This complements the probability of success standard. When the intermediary acts without authority—*outside* the system—the provider has a strong case for an injunction.

**36.** The Secretary argues that an injunction would reward the provider whose poor business practices placed it in a near-bankruptcy

position. There is no evidence that the troubles of these providers were caused by poor management, though it does seem that a prudent manager would provide for the possibility of delayed reimbursement.

**37.** The district court in *Alabama Home Health Care* was compelled to rely ultimately on the credibility of witnesses to determine relatedness. This, too, would not constitute certainty.

finding the organizations to be related, it was not obviously so. Certainly it did not overstep its authority in so finding.[38] The situation of disputed application of a regulation to complex and lengthy facts is particularly suited to initial agency interpretation of its own regulations.

(3) The factor of harm to another party in this case consists mainly in disruption of the agency, a key factor in *Murray.* 415 U.S. at 77–78, 83, 94 S.Ct. at 946–47, 949. The court's need to hold a full hearing on the merits and to determine credibility in a close case seriously disrupts the congressionally mandated process and in effect tells the PRRB how to decide. As to the factual aspect of the case, determination of credibility is the hallmark of de novo review, which is expressly denied the district court. 42 U.S.C. § 1395*oo;* 5 U.S.C. § 706. As to the legal aspect, the agency should have the first opportunity to interpret its own regulations in these factual applications.

There is in addition the possibility that the Government will not recover its overpayment. While the record does not directly suggest that the Government may not recover overpayments in this case, the manifest purpose of the immediate recovery provision is to protect against this possibility. We should respect that administrative assessment, and issuance of an injunction would in effect overrule it.

(4) We see no independent public interest consideration that clearly favors the assumption of jurisdiction.

### VI.

We conclude that it would be inappropriate for a district court to exercise its All Writs Act jurisdiction to grant a status quo injunction in this case. The district court therefore correctly denied V.N.A.'s request for an injunction, though through a different analysis than we have found to be required. The judgment of the United States District Court for the Middle District of Georgia is

AFFIRMED.

GODBOLD, Chief Judge, dissenting:

To justify issuance of a status quo injunction under the All Writs Act pending administrative review, VNA must establish the traditional prerequisites of injunctive relief. I agree with the court that under *Sampson v. Murray* the required strength of VNA's showing depends on two factors: whether a refusal to grant the injunction will defeat the district court's merits jurisdiction and whether Congress intended to preclude or permit an interim injunction. I disagree with the court's evaluation of these two factors and its corresponding conclusion that VNA must make out a virtually certain case.

The court accepts VNA's allegations that it will be forced out of business and go bankrupt if interim relief is denied. Maj. op. at 1031 n. 26. It concludes that this may be a significant impairment of the district court's jurisdiction but does not necessarily defeat it. *Id.* at 1031. It seems to hold that if VNA proved or alleged that it would "disappear", *id.* at 1029, the court could issue an injunction, but if it is merely going bankrupt the court cannot issue an injunction.

This is too fine a distinction. The term "defeat" [of jurisdiction] in *Murray* must be given a common sense meaning. *Murray* emphasized that injunctive relief was needed in *Dean Foods* to prevent "the *practical* disappearance" of one of the litigants through merger and to preserve the agency's and the court's ability to implement "their statutory duties by fashioning effective relief." 415 U.S. at 77, 94 S.Ct. at 947 (emphasis added). Accordingly, the court's jurisdiction is "*effectively* defeated", 415 U.S. at 78, 94 S.Ct. at 947 (emphasis added), when the ultimate exercise of it has little

---

**38.** For example, an intermediary's determination that two organizations were related solely because their presidents were next-door neighbors would involve little fact-finding by the court and would be so clearly unjustified by the regulations that a situation involving serious harm might well justify the issuance of a status quo injunction.

possible chance of achieving efficacious results.

In *Murray* interim relief was not necessary to preserve the possibility of efficacious relief because, as the Court noted, Congress had provided an adequate post-hoc remedy. 415 U.S. at 75, 94 S.Ct. at 945. The situation here is strikingly different. A court has no power to breathe life into the corpse of a provider that is out of business and bankrupt. The possibility that a court may order the government to pay the disputed amount to the provider's representative in bankruptcy proceedings is hardly an efficacious remedy. Absent an injunction the district court's jurisdiction will be effectively defeated within the meaning of *Dean Foods* and *Murray.*

Turning to congressional intent, arguably one can infer an intent favoring issuance of a status quo injunction. Absent an injunction, review by the administrative board as well as the court will become virtually meaningless; with VNA out of business and bankrupt, neither board nor court could grant an effective remedy. This case differs from *Murray* because Congress has not provided an adequate post-hoc remedy, making effective review and relief possible. I believe Congress intended that the review it conferred on board and courts be meaningful.

In assessing congressional intent one must bear in mind that VNA is not asking the district court to decide the merits of its claims; it seeks an interim injunction while the board decides its claims. Because the court overlooks the implications of this basic fact, it errs in inferring an intent to deny or strictly limit interim injunctive relief from 42 U.S.C. § 405(h) and 42 U.S.C. § 1395oo(f)(1).

In pertinent part, § 405(h) provides:

No action against the United States, the Secretary, or any officer or employee thereof shall be brought *under sections 1331 [federal question jurisdiction] or 1346 [United States as a defendant] of title 28* to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (1976) (emphasis added) (incorporated into the Medicare Act by 42 U.S.C. § 1395ii). Section 405(h) generally operates to preclude a district court from deciding the merits of a provider's claims until the board has rendered a final decision. Except where the board lacks jurisdiction to decide issues raised by the provider, *see infra,* the district court cannot base its review on § 1395oo(f)(1) because the board has not rendered a final decision. Section 405(h) acts to preclude the court from deciding the case under the other possible bases of jurisdiction, §§ 1331 and 1346.

VNA does not seek judicial review on the merits of its claims. Section 405(h) is simply inapplicable because this is not an action brought under § 1331 or § 1346, but rather an action brought under the All Writs Act, 28 U.S.C. § 1651(a), in aid of the court's potential jurisdiction under 42 U.S.C. § 1395oo(f)(1).[1] The court's position that § 405(h) does apply thus cannot be supported. Additionally, the court's position conflicts with its holding that interim injunctive relief is available in some cases. If § 405(h) were applicable, it would, by its plain terms, preclude such relief in all cases.

Of course, the lesson of *Murray* is that the All Writs Act should be interpreted in light of policies militating against issuance of interim injunctive relief. But § 405(h) reflects no such countervailing policies. As the court notes, "the main purpose of [§ 405(h)] preclusion is to avoid anticipation by the court of an agency determination on the merits." Maj. op. at pp. 1031–1032. VNA does not seek a determination on the merits of its claims.

The court's reliance on § 1395oo(f)(1) is similarly misplaced. Section 1395oo(f)(1) generally precludes district court review until the board issues a final decision. That

---

1. The All Writs Act is not an independent source of jurisdiction. Rather, it empowers the court to issue injunctive orders to preserve potential jurisdiction founded in other provisions. *See FTC v. Dean Foods,* 384 U.S. 597, 603, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966); *ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1359 n. 19 (5th Cir.1978).

section, however, contains an exception allowing direct judicial review in any action involving an issue that the board lacks jurisdiction to decide. The court reasons that the negative implication of this exception is that Congress intended to preclude injunctive relief while administrative proceedings are pending. But § 1395oo(f)(1) addresses the timing of the district court's review of the merits of a provider's claims, a type of review not involved here. VNA does not seek to circumvent an administrative decision on the merits of its claims; it desires injunctive relief to preserve the possibility of meaningful administrative merits review and relief. I cannot infer from § 1395oo (f)(1) an intent to deny interim injunctive relief. Congress's failure to include an explicit provision authorizing interim injunctive relief in the Medicare Act can be explained on other grounds. Congress might reasonably have concluded that the All Writs Act made such a provision unnecessary. Or Congress possibly did not consider the issue. In any case § 1395oo(f)(1) lends no support to, and, in fact, cuts against, the court's position. Because the board would otherwise be powerless to issue effective relief, interim injunctive relief promotes rather than hinders the administrative review contemplated by § 1395oo(f)(1).

Finally, I do not agree with the conclusion that the district court, in deciding whether to grant a status quo injunction, interferes with the administrative board's review. The court reasons that the district court's determination regarding the plaintiff's probable success on the merits usurps the board's statutory prerogative to decide the merits in the first instance. Although the court's determination is not binding on the board, the court states: "It is simply not realistic to say that the district court ... does not address and decide the merits of the case." Maj. op. at 1032. This reasoning sweeps too broadly. The district court must consider the plaintiff's likelihood of success in every case where interim injunctive relief is sought. The court's opinion implies that in all such cases the court should be reluctant to even entertain the possibility of injunctive relief because its advance assessment of plaintiff's probability of success will effectively predetermine the ultimate decision of the administrative body before whom review is pending. This reasoning suggests that this court, in considering a motion for an injunction pending appeal, should hesitate to assess the plaintiff's likelihood of success because its assessment might taint the decision of the panel to whom the appeal is ultimately assigned. This cannot be correct.

The concern about the effect of the district court's probable success determination on the administrative board's decision was also present in *Murray,* as it is in all cases where interim injunctive relief is sought. Yet the court did not mention this concern, despite discussing whether interim injunctive relief would interfere with the administrative process.

Ironically, the court's "virtual certainty" standard exacerbates the very evil the court seeks to exorcise. A determination that the plaintiff is virtually certain to prevail on the merits necessitates an even firmer conclusion on the merits and is even more likely to straitjacket the administrative board.

To summarize, Congress did not intend to preclude or limit interim injunctive relief. In fact, a status quo injunction aids rather than interferes with the board's review. Absent injunctive relief, the board's merits review will lack meaning because the board is entirely unable to provide an effective remedy. Congress intended that the board's review have meaning and efficacy.

Because without an injunction the district court's jurisdiction will be effectively defeated within the meaning of *Murray,* and the evidence of congressional intent does not militate against the issuance of injunctive relief, I would not require that VNA make out a virtually certain case. I would remand to the district court to determine whether VNA can make out a case under the usual test for injunctive relief.