State of COLORADO, Colorado Department of Human Services Division of Vocational Rehabilitation Business Enterprise Program, Plaintiff

v.

The UNITED STATES of America, The United States Department of the Air Force, Michael B. Donley, Secretary of the Air Force, Defendants.

Civil Case No. 11–cv–00585.

United States District Court, D. Colorado.

April 26, 2011.

Alicia R. Calderon, Betty J. Wytias, Colorado Attorney General's Office, Denver, CO, for Plaintiff.

Scott Andrew Risner, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER (REDACTED)

KANE, District Judge.

Plaintiff has filed a complaint against Defendants, alleging violations of the Randolph–Sheppard Act, 20 U.S.C. §§ 107 *et seq.* ("RS–A"). This matter is currently before me on Plaintiff's Motion for Preliminary Injunction (doc. 2).[1] Plaintiff seeks an injunction preserving the status quo pending its exhaustion of the administrative remedies provided by the RS–A. The parties completed their briefing on the Motion for Preliminary Injunction, and they presented oral arguments at a hearing on April 26, 2011. Having considered the parties' briefs and their oral argument, and based on the forgoing discussion and analysis, the motion is DENIED.

## BACKGROUND

The Randolph–Sheppard Act, 20 U.S.C. §§ 107 *et seq.* ("R-SA"), requires that blind persons licensed by state agencies be given priority to operate vending facilities on federal property. Plaintiff is the State Licensing Agency ("SLA") in Colorado, and it is responsible for licensing blind vendors and submitting bids and applications on their behalf to federal agencies. 20 U.S.C. § 107a(a)(5), (c). It files suit on behalf of Mr. Don Hudson, a licensed blind vendor who is the incumbent provider of services at the High Country Inn Dining Facility ("HCI Dining Facility"), a 385–seat facility that provides full food services to personnel at the United States Air Force Academy in Colorado Springs, Colorado. Plaintiff's contract was for the period of October 1, 2006, through January 31, 2011. Plaintiff is currently in the third month of a permissible six-month extension.

In anticipation of the end of Plaintiff's contract, the United States Air Force ("USAF") posted a request for proposal

---

**1.** Initially, Plaintiffs filed an Application for a Temporary Restraining Order along with their Motion for Preliminary Injunction. After the USAF agreed to extend Plaintiff's contract until April 30, 2011, however, Plaintiff agreed to withdraw its Application for Temporary Restraining Order. *See* Unopposed Motion to Withdraw Application for Temporary Restraining Order (doc. 8).

("RFP") on September 1, 2011, seeking offers for the provision of food services at the HCI Dining Facility. The original deadline for proposals was October 21, 2010, but due to a series of modifications and amendments to the original RFP, the final deadline for submission of proposals was extended to December 13, 2010.

As part of the RFP, the USAF specified the criteria and process by which it would evaluate all bids. At Step 1, each offeror would be assigned a "confidence rating," an assessment of the offeror's ability to perform the contract based on demonstrated past and present performance. At Step 2, all offerors receiving an unacceptable confidence rating would be eliminated from the process, and all remaining offers would be ordered according to total price. At Step 3, all bids falling outside the competitive range (defined as offers within 5% of the lowest offered price) would be eliminated from the process. At Step 4, priority was to be given under the R-SA if any of the remaining bids had been submitted by an SLA. If no SLA bid remained, Step 5 specified that the remaining bids would be assessed based on cost and confidence rating.

In response to this RFP, Plaintiff submitted an offer to provide the requested services. Its offer received the highest confidence rating possible, and it was among the bids ordered by price at Step 2. The lowest remaining offer, submitted by Crystal Enterprises, Inc., was for a total price of [redacted]. Thus, at Step 3 the competitive range was established as all bids with a total price of less than [redacted]. Plaintiff's bid, with a total price of [redacted], was eliminated because it was outside the competitive range. Accordingly, it was not afforded R-SA priority at Step 4, and the USAF eventually selected the offer submitted by Crystal Enterprises, Inc., at Step 5.

On March 8, 2011, Plaintiff filed an Application for Temporary Restraining Order and Motion for Preliminary Injunction (doc. 2). Specifically, Plaintiff argued that Defendants had violated the R-SA in failing to award priority to its bid. Although Plaintiff is pursuing the administrative remedies provided for, and required by, the RSA, *see* 20 U.S.C. §§ 107d–1(b) and 107d–2, it seeks injunctive relief staying any contract award or contract performance pending the resolution of this challenge.

### JURISDICTION

It is well settled that federal courts are courts of limited jurisdiction; I may only hear those cases which have been entrusted to me under a jurisdictional grant by Congress. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir.1994) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); and *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). Petitioners assert that jurisdiction in this court is afforded by the R-SA as well as the All Writs Act, 28 U.S.C. § 1651(a). I address each in turn.

#### *Randolph–Shepard Act*

As Plaintiffs acknowledge, "when a SLA believes a violation of the R-SA has occurred in connection with a proposed award for a procurement, the SLA is required to pursue its administrative remedies by arbitration at the Department of Education." Complaint (doc. 1) at 7. Although the language of the RSA addressing exhaustion of administrative remedies is on its face permissive, *see* 20 U.S.C. § 107d–1(b) (providing that an SLA "may file a complaint with the Secretary who will convene a panel to arbitrate the dispute ..."), the vast majority of courts have concluded, and I agree, that a party seeking to challenge an agency's compli-

ance with the R-SA must first exhaust its administrative remedies before seeking judicial review. *See, e.g., Randolph–Sheppard Vendors of America, et al. v. Weinberger,* 795 F.2d 90, 104 (D.C.Cir.1986).

■ Despite the general rule that exhaustion of administrative remedies is a prerequisite to judicial review, Plaintiffs argue that "it is well-settled that federal courts have the judicial authority to enter injunctive relief pending the resolution of an administrative proceeding."[2] Brief in Support of Motion for Preliminary Injunction (doc. 3) at 9. In support of this "well-settled" proposition, Plaintiffs cite two Supreme Court cases: *Arrow Transp. Co. v. Southern Ry. Co.,* 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963) and *Fed. Trade Comm'n v. Dean Foods Co., et al.,* 384 U.S. 597, 604, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1965). Although these cases hold that courts have the power "to preserve [their] jurisdiction or maintain the status quo by injunction pending review of an agency's action," *Dean Foods,* 384 U.S. at 604, 86 S.Ct. 1738, this authority is grounded in the All Writs Act. *See Dean Foods,* 384 U.S. at 599, 86 S.Ct. 1738 ("At issue here is the power of the Court of Appeals under the All Writs Act...."). Accordingly, I shift my focus to determining if, and under what circumstances, I may exercise jurisdiction over Plaintiff's motion under the All Writs Act.

### All Writs Act

■ The All Writs Act empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

This expansive grant of authority includes a "limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through prescribed channels." *Arrow Transp. Co.,* 372 U.S. at 671 n. 22, 83 S.Ct. 984.

In *Dean Foods,* a narrowly-divided Court employed a seemingly expansive view of this "limited" power. Relying upon a line of cases culminating in the above-cited footnote from *Arrow Transp.,* the Court held that the power to enter a status quo injunction "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may later be perfected." *Dean Foods,* 384 U.S. at 603, 86 S.Ct. 1738 (citing *Arrow Transp. Co.,* 372 U.S. at 671 n. 22, 83 S.Ct. 984; *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 25, 63 S.Ct. 938, 87 L.Ed. 1185 (1942); *Scripps–Howard Radio, Inc. v. Fed. Commc'ns Comm'n,* 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); *McClellan v. Carland,* 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). In holding that the Federal Trade Commission could seek an injunction pending its review of a merger which it believed, but had not yet administratively determined, was anticompetitive, the Court relied heavily upon an extremely compelling set of facts. Namely, the FTC argued that absent the sought-after injunctive relief, the resultant sharing and division of assets between the merging companies would render *impossible* the fashioning of an effective administrative remedy. *Id.* at 600.

■■ The Court has, however, retreated from this expansive view. As the Court

---

**2.** There are exceptions to the exhaustion requirement, allowing courts to exercise jurisdiction when, "resort to administrative remedies would be futile; or, second, when the remedy provided is inadequate." *McGraw v. Prudential Ins. Co. of Am.,* 137 F.3d 1253, 1263 (10th Cir.1998) (citations omitted). The first exception is inapplicable here, and the second closely parallels the question of irreparable harm discussed below. *See infra* p. 1235 n. 3, pp. 1235–37.

has reaffirmed, the All Writs Act "is to be used sparingly and only in the most critical and exigent circumstances." *Wis. Right to Life, Inc. v. Fed. Election Comm'n,* 542 U.S. 1305, 1306, 125 S.Ct. 2, 159 L.Ed.2d 805 (2004). Thus, in order to justify my exercise of jurisdiction under the All Writs Act to provide the equitable relief it seeks, Plaintiff "at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions...."[3] *Sampson v. Murray,* 415 U.S. 61, 83–84, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

■ As described by the Eleventh Circuit, "the proper analysis adjusts the standard requirements for the requested preliminary injunction in light of (1) whether refusal to grant the injunction will defeat the court's review jurisdiction and (2) whether Congress intended to permit or to preclude a status quo injunction." *V.N.A. of Greater Tift Cty., Inc.,* 711 F.2d 1020, 1029 (11th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).[4] If in my review jurisdiction is not in jeopardy and Congress has not evidenced an intent to permit a status quo injunction, Plaintiff must justify the ex-

traordinary relief it seeks by demonstrating a virtual certainty of irreparable harm. *See id.* at 1034.[5] Thus, in determining whether it is proper to grant Plaintiffs the relief they seek under the All Writs Act, I must examine these factors to determine whether Plaintiff has made the requisite showing.

■ In considering the first factor, it is apparent that it is not necessary to grant an injunction to preserve my review jurisdiction. On this point, a careful analysis of *Dean Foods* is instructive. In finding the district court's grant of injunctive relief proper, the Supreme Court noted that "an effective remedial order, once the merger was implemented, would [have been] otherwise *impossible,* thus rendering the enforcement of any final decree or divestiture futile." 384 U.S. at 605, 86 S.Ct. 1738 (emphasis added). Quite simply, absent preliminary injunctive relief, the merging parties would have ceased to exist. In the instant case, it is apparent that Plaintiff's existence is not at risk. The SLA will continue to operate whether or not it is awarded the contract to provide dining services at the HCI Dining Facility.

3. As noted above, the question of irreparable harm closely parallels an exception to the requirement that a party exhaust all administrative remedies before seeking judicial review. *See supra* n. 2.

4. Although the Tenth Circuit has not addressed this issue, other District Courts considering the propriety of granting of injunctive relief under the All Writs Act have adopted the approach articulated by the Eleventh Circuit. *See Frankford Hosp. v. Davis,* 647 F.Supp. 1443, 1447 (E.D.Pa.1986); *Landmark Med. Ctr. v. Bowen,* 700 F.Supp. 350, 351 (W.D.Tex.1988); *Redbud Hosp. Dis. v. Heckler,* 1984 WL 2857, 1984 U.S. Dist. LEXIS 24704 (N.D.Cal. July 30, 1984);

5. In *V.N.A. of Greater Tift County,* the Eleventh Circuit held that a party must make a heightened showing of each of the tradition-

al preliminary injunction standards to justify preliminary injunctive relief under the All Writs Act. 711 F.2d at 1034. I am not convinced that this comports with the other concerns inherent in granting a preliminary injunction pending resolution of Plaintiff's arbitration claim—namely, interfering with the arbitration panel's decision. As Judge Godbold noted in dissent, "the court's virtual certainty [of success on the merits] standard ... necessitates an even firmer conclusion on the merits and is even more likely to straitjacket the administrative board." *Id.* at 1037. I need not resolve this issue, however, as I find that Plaintiff's have failed to make an adequate showing of irreparable injury.

Plaintiff also argues that, absent the sought after injunctive relief, the incumbent vendor at the HCI Dining Facility "will have no further business for his company, Daybreaker Services, Inc., and he fully expects that his company will have to cease doing business after March 31, 2011." Plaintiff's Opening Brief (doc. 3) at 13. Even if Mr. Hudson's business ceased to exist, however, I would still have jurisdiction over *Plaintiff's* complaint once the arbitration process is completed.

I now turn to an analysis of Congressional intent as it relates to the granting of preliminary relief under the R-SA. As noted above, Congress provided an administrative remedy for complaints under the RS-A. *See* 20 U.S.C. § 107d-1(b). According to the Sixth Circuit:

> Congress' decision to provide administrative and arbitration remedies for aggrieved blind vendors clearly evidences a policy judgment that the federal courts should not be the tribunal of first resort for the resolution of such grievances. Rather congressional policy as reflected in the 1974 amendments is that blind vendors must exhaust their administrative and arbitration remedies before seeking review in the district courts.

*Fillinger v. Cleveland Soc'y for the Blind,* 587 F.2d 336, 338 (6th Cir.1978). Congress was, however, conspicuously silent regarding the availability of preliminary relief pending a party's exhaustion of the statutorily prescribed administrative remedies. Accordingly, I decline to infer any intent to permit or preclude such relief. *Cf. Scripps–Howard Radio, Inc.,* 316 U.S. at 11, 62 S.Ct. 875 (Noting that "the search for significance in the silence of Congress is too often the pursuit of a mirage"). This factor, therefore, is neutral in my analysis. In light of my finding on the first factor, however, Plaintiff must demonstrate a virtual certainty of irreparable harm as required by the Supreme Court in

*Murray* and articulated by the Eleventh Circuit to justify preliminary injunctive relief under the All Writs Act.

*Virtual Certainty of Irreparable Injury*

Plaintiff cites four irreparable harms which will result if it is not granted a preliminary injunction preserving the status quo pending the resolution of its arbitration claim. First, Plaintiff asserts two economic harms that, absent the sought after injunctive relief, will significantly impact Plaintiff and Mr. Hudson. Specifically, Plaintiff asserts that "Mr. Hudson will have no further business for his company, Daybreaker Services, Inc., and he fully expects that his company will have to cease doing business after March 31, 2011." Plaintiff's Opening Brief (doc. 3) at 13. Plaintiff also argues that it will lose the "set-aside" funds that Mr. Hudson must pay the State for his R-SA contract as well as the federal matching funds provided by the federal government to the Plaintiff as the SLA.

I do not discount the gravity of these economic harms. As Plaintiff asserts, for all intents and purposes, on expiration of his contract with the USAF, Mr. Hudson will lose his livelihood. Ordinarily, however, these economic injuries are not considered irreparable harm. As the Eleventh Circuit noted in *V.N.A. of Greater Tift County,* even bankruptcy is not sufficient evidence of irreparable harm. 711 F.2d at 1034. Plaintiff argues that this is no ordinary case, because even if it were to prevail on its arbitration claim, it would not be made whole because the arbitration panel lacks the authority to award monetary damages caused by the delay. Although this argument is true, it ignores the fact that the RS-A gives the Secretary of Education broad remedial powers. *See Randolph–Sheppard Vendors of America, et al.,* 795 F.2d at 109 (Holding that "the Secretary of Education has broad remedial

powers under the Act"). Furthermore, were I to find Defendants had violated the R-SA, monetary compensation provides the adequate remedy at law for these potential harms.

Plaintiff does not, however, rely solely on economic harms to justify its requested relief. Plaintiff argues that once Mr. Hudson loses the contract to provide services at the HCI Dining Facility he will "lose a very talented team" and his support contractor. Although these harms are real, it is unclear how they are irreparable. Plaintiff has not shown that it will be impossible for Mr. Hudson to re-hire his team members and support contractor, or recruit new team members and a new support contractor if necessary, to staff the HCI Dining Facility should he eventually be re-awarded the contract. This is not sufficient evidence of irreparable harm to justify extraordinary relief under the All Writs Act.

 Finally, Plaintiff alleges that once the contract for providing services at the HCI Dining Facility is awarded to a non-R-SA vendor, the services at the facility will not be subject to R-SA priority. Plaintiff fears that once the contract is awarded to a non-SLA, it will be "poached" and subject to the Javits–Wagner–O'Day Act ("JWOD Act"). 41 U.S.C. §§ 46–48c. As Defendants note, however, even if this argument were true, it ignores the ability of judicial recourse. "If [Plaintiff's] arbitration complaint and any subsequent judicial review result in a finding that the Air Force improperly awarded the contract to a party other than Colorado, then the priority afforded to the contract under the R-SA would be restored going forward." Defendants' Response Brief (doc. 14) at 42.[6]

Even under the irreparable harm standard applicable to "normal" requests for preliminary injunctions, none of Plaintiff's alleged harms are irreparable. And they certainly do not "override [the] factors cutting against the general availability of preliminary injunctions ..." under the All Writs Act. *Sampson v. Murray*, 415 U.S. 61, 83–84, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Accordingly, I need not address the other preliminary injunction factors.

### CONCLUSION

Although expansive in scope, the All Writs Act is limited in its application. As the Supreme Court has repeatedly emphasized, the All Writs Act is an extraordinary exercise of judicial authority which "is to be used sparingly and only in the most critical and exigent of circumstances." *Wis. Right to Life, Inc.*, 542 U.S. at 1306, 125 S.Ct. 2. Plaintiff has failed to establish the existence of such circumstances in this case.

Indeed, a contrary result would be inconsistent with the priority contracting scheme Congress created in passing the Randolph–Shepard Act. By choosing to participate in the R-SA program, vendors and SLAs "take a knowing risk," and "there is no reason to think that the straits in which this [vendor and SLA] find[] [themselves] 'so far depart from the normal situation' as to justify fundamental deviation from the statutory scheme." *V.N.A. of Greater Tift Cty., Inc.*, 711 F.2d at 1034 (quoting *Sampson*, 415 U.S. at 92 n. 68, 94 S.Ct. 937). As Defendants note, a contrary finding would result in a windfall

---

**6.** Because I find this alleged harm reparable, I need not address the merits of Plaintiff's claim that the HCI Dining Facility contract is subject to poaching under the JWOD Act. It is important to note, however, that Defendants strenuously, and somewhat convincingly, deny that this contract is subject to being removed from the realm of the R-SA. *See* Defendants' Brief in Response (doc. 14) at 42–43 n. 10.

to any incumbent R-SA contractor who bids unsuccessfully on a contract's renewal. Defendants' Response Brief (doc. 14) at 42.

In such circumstances, it is inappropriate to interfere with the Congressionally mandated scheme for resolving disputes under the R-SA and the Department of Defense's discretion in soliciting and selecting vendors for the provision of essential services. Accordingly, Plaintiff's Motion for Preliminary Injunction is DENIED. Defendant's Motion to Dismiss for Lack of Jurisdiction (doc. 17) is GRANTED.